# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JUAN MATA,

       Plaintiff,

vs.                                           No. CIV 08-0046 JB/RLP

SGT. RON ANDERSON,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion and Brief to Dismiss Plaintiff's Complaint for Failure to Timely Serve or, In the Alternative, Motion for Judgment on the Pleadings, filed July 7, 2008 (Doc. 9)("Motion").  The Court held a hearing on October 23, 2008.  The primary issues are: (i) whether the Court should dismiss the suit for failure to timely serve when the Complaint was not served within 120 days potentially had run during the 40 days after the 120 days passed; (ii) whether the Plaintiff Juan Mata has stated the essential element of lack of probable cause for a claim for First-Amendment retaliation where a magistrate court jury found him guilty and a district court judge submitted two of three counts to a jury that acquitted him; (iii) whether Defendant Ron Anderson, a police officer who signed the criminal complaint and the underlying statement of probable cause, enjoys absolute immunity; and (iv) whether Anderson enjoys qualified immunity.  The Court will excuse Mata's failure to timely serve and will grant him an extension to complete service.  The Court finds that, on the face of his Complaint, Mata has established a claim for First Amendment retaliation.  The Court also finds that Anderson is not entitled to absolute or qualified immunity.

## FACTUAL BACKGROUND

On a motion to dismiss, the Court must assume that the Complaint's allegations are true. Thus, the Court sets forth the relevant facts as the Complaint alleges them. This motion, however, also involves some facts that are not ascertainable from the face of the pleadings, but which are necessary to fully understand the context of this lawsuit. The Court will therefore refer at times to facts that appear in exhibits, briefing, and in the transcript of the hearing to provide context. At the same time, the Court remains mindful of the standard for deciding a motion to dismiss.

Mata was one of several Mata family members who filed a civil-rights lawsuit on November 28, 2004. See Mata v. Briseno, No. CIV 04-1334 ACT/RLP, Complaint, filed November 28, 2004 (Doc. 1)("First Mata case"). Mata, his brother Renee Barraza, and his mother, Gregoria, sued certain agents of the Farmington Police Department. See First Amendment Complaint for Violation of Civil Rights Under Color of State Law ¶ 7, at 2, filed June 18, 2008 (Doc. 6)("First Amended Complaint"). The First Mata case settled a year later, on November 14, 2005. See Mata v. Briseno, the Honorable Richard L. Puglisi, United States Magistrate Judge's Notice to Docket Clerk at 1, filed November 16, 2005 (Doc. 70)("Settlement Notice").[1] The lawsuit that led to the November 2005 settlement has some relationship to this lawsuit. According to Mata, Anderson, a law enforcement officer and employee of the Farmington Police Department, became "enraged" because of the news coverage that the settlement received. First Amended Complaint ¶¶ 2 & 8, at 1-2. Motivated by a desire to retaliate against Mata for his outspoken criticism of Farmington police officers, for his protest activities outside the police station, and for the settlement he and his family members obtained in the first lawsuit, Anderson filed a criminal complaint against Juan Mata listing,

---

[1] This document comes to the Court's attention as Exhibit A to Anderson's Answer.

among other things, criminal libel.  <u>See</u> First Amended Complaint ¶¶ 10-13.

Although the First Amended Complaint provides little detail of the criminal proceedings that resulted from the criminal complaint, it is apparent from the briefing, exhibits, and arguments presented at the hearing, that the criminal complaint contained three counts – harassment, stalking, and criminal libel.  Mata was tried in a Magistrate Court in San Juan County, and the magistrate jury convicted Mata on all three counts.  <u>See</u> Exhibit E to Answer, Magistrate Verdict Forms, filed July 7, 2008 (Doc. 8-6).

Judges who are not usually trained in the law preside over municipal and magistrate courts in New Mexico.[2]  One of the safeguards against miscarriages of justice built into this structure is a defendant's entitlement to a trial de novo in the state district court.  Mata availed himself of this proceeding and sought a trial de novo in the state district court.  At the district court, the district judge dismissed the criminal libel charge, finding it unconstitutional, and allowed the other two charges to proceed to the jury.  <u>See</u> Transcript of Hearing at 15:19-25 (taken October 23, 2008)(Walker)("Tr.").[3]  It is to this second trial that Mata refers in his First Amended Complaint, stating: "A jury, after deliberating only a few minutes after trial, declared Plaintiff Juan Mata not guilty of all charges brought against him by Sgt. Anderson."  First Amended Complaint ¶ 20, at 4.

## PROCEDURAL BACKGROUND

Mata filed this case on January 11, 2008, asserting a 42 U.S.C. § 1983 claim for alleged retaliation in violation of the First Amendment.  Anderson asserts that Mata's Complaint is premised

---

[2] Mata characterizes New Mexico's municipal and magistrate court system as anachronistic. The Court need not comment on or criticize New Mexico's use of lay people as judges in its traffic courts for purposes of this opinion.

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

on the impossible allegation that a desire to retaliate against Mata for the settlement of the First Mata case motivated Anderson's alleged act of filing the criminal charges.  See First Amended Complaint ¶ 10, at 3.  According to Mata, this retaliation violated his First-Amendment right of free speech.  See id., Count I, at 3.  Mata filed his suit in this case for civil-rights violations three years to the day after the criminal charges against him were filed.    See State v. Mata, M-47-MR-200500028, Farmington Magistrate Court, Copy of Docket Sheet at 1 (dated January 31, 2005).  According to Anderson, the statute of limitations would have run on Mata's claims the day that Mata filed his original complaint.   Mata was required to serve Anderson by May 10, 2008.  See Fed. R. Civ. 4(m)("If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant . . . .").

### 1.    Service of the First Amended Complaint.

Mata filed his First Amended Complaint on June 18, 2008, which made no substantive change to his allegations and was identical to the original Complaint except that the Amended Complaint omitted an unnumbered prefatory paragraph that related to some other case.  Mata filed the Amended Complaint outside of the 120-day period.  Although Mata did not attach the criminal complaint to the Complaint or to the First Amended Complaint, the First Amended Complaint makes numerous references to that criminal complaint.

It is undisputed that Mata failed to serve Anderson within 120-days of filing the original Complaint.  Mata did not served his Amended Complaint on Anderson until June 19, 2008, 160 days after he filed his Complaint and roughly 40 days after expiration of the 120-day deadline.

Anderson filed an Answer to Mata's First Amended Complaint.  See Answer to Amended Complaint, filed July 7, 2009 (Doc. 8)("Answer").  In his Answer, Anderson raises several equitable

defenses, including the defense of unclean hands, see Answer, Affirmative Defense 4, at 4; waiver and estoppel, see Answer, Affirmative Defense 5, at 4, and laches, see Answer, Affirmative Defense 7, at 5.  Anderson attached the criminal complaint, along with other exhibits, to his Answer.

Anderson moves the Court for dismissal of Mata's Complaint for failure to effect timely service under rule 12(b)(5) of the Federal Rules of Civil Procedure.  See Motion at 1.  Anderson alternatively requests that the Court enter judgment on the pleadings.  Anderson requests that the Court dismiss Mata's First Amended Complaint with prejudice.  In support of his Motion, Anderson raises several arguments: (i) the Court should dismiss due to the lack of timely service; (ii) the Court should dismiss on the merits because Mata fails to state a claim upon which relief can be granted; (iii) the Court should dismiss because Anderson is absolutely immune from suit in this case; or (iv) the Court should dismiss the case because Anderson enjoys qualified immunity under the circumstances of this case.

## 2.        Arguments Regarding Failure to Timely Serve and the Statute of Limitations.

Anderson points out that rule 12(b)(5) permits a party to move for the dismissal of a complaint for "insufficiency of service of process."  Motion at 2 (internal quotation marks omitted).  He notes that the time limit that rule 4(m) lays out required Mata to complete service of process by May 10, 2008.  Anderson quotes part of rule 4(m), and emphasizes the rule's command that, if the 120-day deadline is missed, the Court "*must* dismiss the action without prejudice against the defendant. . . ."   Motion at 3 (quoting Fed. R. Civ. P. 4(m))(internal quotation marks omitted)(emphasis added).

Anderson admits that the original filing came within the applicable statute of limitations and that Mata's filing the lawsuit tolled the statute of limitations for the 120-day period that rule 4(m) provides for effectuating service of process.  See Motion at 3.  Anderson argues, however, that,

although the statute of limitations is tolled during the 120-period, once the 120 days have passed, the clock on the statute of limitations resumes and the statute of limitations again becomes applicable.  See id.  Anderson insists that the clock began running on Mata's claims on the day that the 120-day period expired and that, shortly thereafter, the limitations period ran out.  According to Anderson, the result of Mata's missing the deadline for service of process, and the application of the statute of limitations, is to bar Mata's lawsuit.  See id.

Although this result appears harsh, Anderson asks the Court to dismiss Mata's claim and allow the statute of limitations to operate to its full effect.  Anderson reminds the Court that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."  Id. (quoting Baldwin County Welcome Center v. Brown, 466 U.S. 147, 152 (1984))(internal quotation marks omitted).  Moreover, Anderson points out that, "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."  Motion at 3 (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980)).  Thus, Anderson urges the Court to strictly adhere to procedural requirements.  See Motion at 3.  Anderson also calls to the Court's attention the fact that Mata presumably knows how to serve process on a police officer, given that he has successfully sued police officers in the past, and that Mata has offered no good cause for the delay.  See id.

Mata counters that Anderson was served with the summons and Complaint in the case, albeit outside the prescribed time frame.  See Plaintiff's Response to Sergeant Anderson's Motion to Dismiss for Failure to Timely Serve or in the Alternative for Judgment on the Pleadings at 2, filed July 21, 2008 (Doc. 11)("Response").  Mata also maintains that the Court routinely issues notices to plaintiffs in civil actions advising them when a complaint has not been served and setting

deadlines for service.  See id. at 2.  Mata states that he did not receive such a notice, but nevertheless sought to rectify the failure of service as soon as possible.  See id. at 3.

Mata challenges the contention that, if the Court dismisses his claims, the statute of limitations will bar refiling by arguing that the cause of action did not accrue until his criminal conviction was invalidated.  See id. at 5.  Mata argues that, given that his acquittal came nearly a year after the initial filing of the criminal complaint, Mata would still be within the applicable statute of limitations and his claim would therefore not be barred.  See id. at 6.

Mata also argues that by raising several equitable defenses, including the defense of unclean hands, Anderson has evoked the Court's jurisdiction.  See id.  According to Mata, by Anderson's "extensive participation in the litigation process," Anderson has waived the right to object to lack of timely service of process.  Id.  Mata contends that a waiver is not unjust in this case, because Anderson is not being asked to defend himself in a distant forum, and he cannot demonstrate true prejudice from the moderate delay in the service of process.  See id. at 4.

Anderson replies that Mata did not attempt to demonstrate good cause for his failure to delay. See Reply in Support of Defendant's Motion and Brief to Dismiss Plaintiff's Complaint for Failure to Timely Serve or, In the Alternative, Motion for Judgment on the Pleadings at 2, filed July 28, 2008 (Doc. 12)("Reply").  Anderson also disputes the suggestion that he has waived the ability to object to Mata's failure to timely serve and maintains that he has consistently asserted the defense that Mata failed to timely serve process.  See id.  Anderson notes that he filed his Answer, asserting lack of personal jurisdiction for failure to serve process, less than twenty days after he was served. See Reply at 3.  Anderson therefore contends that his prompt and orderly conduct in responding to Mata's lawsuit cannot fairly constitute a waiver of the right to challenge the adequacy of service of process.

-7-

3.      __Arguments Regarding Dismissal on the Pleadings.__

As an alternative to his argument that the Court should dismiss Mata's claim for untimely service of process, Anderson contends that Mata fails to state a cause of action for First Amendment retaliation.  See id. at 4.  Anderson asks the Court to take judicial notice of the fact that criminal charges were filed in January 2005.  See id.  Those charges, Anderson argues, came eleven months before the November 2005 settlement which, according to Mata, caused Anderson to retaliate.  See id.  It is this temporal discontinuity which compelled Anderson to note in his Answer that "the realities associated with the Earth's time-space continuum preclude any reasonable conclusion that the execution of the Statement of Probable Cause on January 11, 2005 was done 'to retaliate against' Plaintiff for settling [the first lawsuit] in November 2005."  Answer ¶ 10, at 2-3.

Mata attributes Anderson's interpretation of his claim as being based on retaliation solely for the settlement of the first lawsuit as a product of inartful drafting in the First Amended Complaint.  See Response at 6.  Mata argues that his claim arises out of a broader allegation that Anderson retaliated against him for bringing a civil rights action and for his protest activities.  See id.  To the extent that the First Amended Complaint does not reflect such an allegation, Mata requests leave to amend.  See id.

Anderson also argues that Mata has failed to allege lack of probable cause for the criminal complaint.  See Motion at 6.  Anderson contends that the Supreme Court of the United States has held lack of probable cause to be an essential element to a First Amendment retaliation claim.  See id. (citing Hartman v. Moore, 547 U.S. 250 (2006)).  Anderson cites cases which stand for the proposition that probable cause requires less than the evidence needed for a conviction and that, even when a conviction is subsequently overturned, courts will find the existence of probable cause.  See Motion at 7 (citations omitted).  Anderson asserts that he had probable cause.  At least, he

argues, Mata has failed to allege a lack of probable cause in his First Amended Complaint.  See id. at 8.

Mata states in his Response that he "does not dispute that his First Amendment Retaliation claim requires that he allege, and later prove, that the charges brought against him lacked probable cause."  Response at 7.  Mata insists, however, that the municipal court did not conduct a preliminary hearing and enter a finding of probable cause.  See id.  Mata criticizes the municipal and magistrate courts because the judges who preside over them are not typically trained in the law.  See id.  He asserts that trial de novo in the district court is designed to protect the miscarriages of justice that can occur in the municipal courts under such circumstances.  Thus, the conviction by the magistrate jury is not sufficient at this stage to preclude his claim.  See id.

In his Reply and at the hearing, Anderson brought to the Court's attention one federal case in which the United States Court for the Northern District of Texas held that "a conviction was prima facie evidence of probable cause in a malicious prosecution suit, notwithstanding the fact that a new trial had been granted, and was conclusive on the issue of probable cause in the absence of evidence that the conviction was obtained by improper means or upon false arrest."  Reply at 11 (citing Adcox v. Safeway Stores, Inc., 512 F. Supp. 452, 454 (N.D. Tex. 1980)).  Anderson also cites the Restatement (Second) of Torts § 667(1) for the proposition that "'the conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means.'"  Reply at 11 (quoting Restatement (Second) of Torts § 667(1)).  At the hearing, Anderson also asserted that the fact that the district judge allowed two of the criminal charges to go to the jury in the de novo trial suggests that the district judge made an implicit finding that there was probable cause.  See Tr. at 16:17-23 (Court, Walker).

-9-

### 4.      Arguments Regarding Absolute Immunity.

Referring to the process by which the criminal complaint was sworn, Anderson argues that, to the extent the First Amended Complaint is predicated on him "filing" the criminal case, his role was analogous to that of a prosecutor making or participating in the decision to prosecute.  Motion at 5.  Accordingly, he insists that he is entitled to absolute immunity in this case.  See id.  Mata counters that normally, police officers are not afforded absolute immunity.  See Response at 10.  Moreover, he notes that in Roberts v. Kling, 144 F.3d 710, 711 (10th Cir. 1998), the United States Court of Appeals for the Tenth Circuit held that a prosecutor who executed a criminal complaint by which he affirmed the truth of the facts set forth in the complaint enjoyed only qualified immunity.  See Response at 11.  Although Mata does not explicitly say so, the Court interprets this citation to mean that Anderson's conduct is analogous to that of the prosecutor in Roberts v. Kling, and that Anderson is consequently entitled, at most, to qualified immunity.

### 5.      Arguments Regarding Qualified Immunity.

As a final defense, Anderson asserts qualified immunity because Mata did not sufficiently allege violation of a constitutional right, given that the supposed retaliation upon which the claim rests occurred before the alleged speech conduct that triggered the retaliation.  See Motion at 9.  Further, even if a constitutional violation occurred, Anderson maintains that Mata cannot establish that a reasonable person in Anderson's shoes would have known his conduct amounted to a constitutional violation.  See id.  Anderson contends that the existence of probable cause at the time of filing the criminal complaint is sufficient for him to have qualified immunity from suit.  See id.  Mata charges that the long and clearly established law is that the "warrant requirement is violated when a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit if the false statement is necessary to a finding of

probable cause." Response at 12 (quoting <u>Clanton v. Cooper</u>, 129 F.3d 1147, 1154 (10th Cir. 1997))(internal quotation marks omitted).

      **6.**    <u>**The Hearing**</u>**.**

      At the hearing, Anderson conceded that the First Amended Complaint contains some allegations that are not rooted in the settlement. <u>See</u> Tr. at 12:10-13 (Walker). Specifically, he admitted that the First Amended Complaint alleges retaliation for protesting or picketing. <u>See</u> <u>id.</u> at 12:8-9 (Walker). Anderson reserved the argument, however, that, to the extent Mata's claim relies on allegations of retaliation for the settlement, the claim must fail.

      While there has been some question whether Mata was alleging a Fourth-Amendment malicious-prosecution claim, Mata clarified at the hearing that, while he wished to amend his First Amended Complaint to include a malicious-prosecution claim, the current operative Complaint does not allege such a claim. <u>See</u> Tr. at 26:19-21 (Mata)("I think the First Amended Complaint as it now stands brings only the First Amendment charges. We would seek to add a Fourth Amendment.").

      Mata contended at the hearing that the conviction by the magistrate jury constituted, at most, evidence of the existence of probable cause and that the evidence created ambiguity regarding the existence of probable cause. <u>See</u> Tr. at 22:23 (Montoya). Anderson countered that, if there was indeed ambiguity regarding whether probable cause existed, then he would entitled to qualified immunity. <u>See</u> <u>id.</u> at 30:12-18 (Walker). At the end of the hearing, the Court also clarified that, while the parties have referenced various exhibits and evidence outside the First Amended Complaint, the Court considers this a motion to dismiss. <u>See</u> Tr. at 46:23-47:3 (Court, Walker).

<u>**STANDARDS FOR DISMISSAL UNDER RULE 12(c)**</u>

      "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A rule 12(c) motion is designed to provide a

means of disposing of cases when the material facts are not in dispute between the parties.  See Kruzitis v. Okuma Mach. Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994)("Under Rule 12(c), we will not grant judgment on the pleadings unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.")(internal quotation marks omitted).   A "[j]udgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'"  Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d 1239, 1244 (10th Cir. 2006)(citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).

"Any party may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial notice." Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. 303, 304 (D.N.M. 2000)(citing Fed. R. Civ. P. 12(c)). A motion pursuant to rule 12(c) is generally treated in the same manner as a motion to dismiss under rule 12(b)(6). See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304 (citing Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998)).  A motion for a judgment on the pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.

A court considering a motion for judgment on the pleadings should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d at 1244.  The court must view the facts presented in the pleadings and draw the inferences therefrom in the light most favorable to the nonmoving party.  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304. All of the nonmoving parties' allegations are deemed to be true, and all of the movants' contrary

assertions are taken to be false.  See Nat'l Metro. Bank v. United States, 323 U.S. 454, 456-57 (1945); Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000); Freeman v. Dep't of Corr., 949 F.2d 360, 361 (10th Cir. 1991).

The same standards that govern a motion to dismiss under rule 12(b)(6) also govern a motion for judgment on the pleadings under rule 12(c).  See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000).  Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.

2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969). "The [Supreme] Court [of the United States] explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177.   The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 127 S Ct. at 1974)(internal citations omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  [Bell Atl. Corp. v. Twombly, 127 S.Ct.] at 1965 n. 3.  See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").  The Twombly Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin."  Id.

Robbins v. Oklahoma, 519 F.3d at 1248.

In determining the sufficiency of a complaint, all well-pleaded factual allegations are to be

taken as true.  See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (l0th Cir. 2002).

"Nevertheless, conclusory allegations without supporting factual averments are insufficient to state

a claim upon which relief can be based."  Hall v. Belman, 935 F.2d 1106, 1110 (l0th Cir. 1991).

"Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true

only the plaintiff's well-pleaded factual contentions, not his conclusory allegations."  Id.  Only well-

pleaded facts, as distinguished from conclusory allegations, are admitted when considering a motion

to dismiss for failure to state a claim upon which relief can be granted.  See Smith v. Plati, 258 F.3d

1167, 1174 (10th Cir. 2001).

A court must convert a motion to dismiss into a motion for summary judgment if "matters

outside the pleading are presented to and not excluded by the court" and "all parties . . . [are] given

reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R.

Civ. P. 12(d).  Facts subject to judicial notice may be considered without converting a motion to

dismiss into a motion for summary judgment.  See Grynberg v. Koch Gateway Pipeline Co., 390

F.3d 1276, 1279, n.1 (10th Cir. 2004)(citing 27A Fed. Proc., L.Ed. § 62:520 (2003)).  Furthermore,

when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files

and records, as well as facts which are a matter of public record."  Van Woudenberg v. Gibson, 211

F.3d 560, 568 (10th Cir. 2000) abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946,

955 (10th Cir. 2001). A court may consider documents to which the complaint refers if the

documents are central to the plaintiff's claim and the parties do not dispute the documents'

authenticity.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002).  If,

however, a document is not incorporated by reference or attached to the complaint, but is referred

to in the complaint and is central to the plaintiff's claim, the defendant may submit an "indisputably

authentic copy to the court to be considered on a motion to dismiss."  GFF Corp. v. Assoc.

Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  See 5A C.  Wright & A. Miller,

Federal Practice & Procedure § 1327 (3d ed. 2004)("[W]hen the plaintiff fails to introduce a

pertinent document as part of her pleading . . . the defendant may introduce the document as an

exhibit to a motion attacking the sufficiency of the pleading.").

## RULES 4(m) AND 12(b)(5)

While rule 4 establishes the proper procedures and timing for service of process, rule

12(b)(5) presents litigants with a mechanism for raising a defense of insufficient service of process.

"Procedural requirements established by Congress for gaining access to the federal courts are not

to be disregarded by courts out of a vague sympathy for particular litigants."  Baldwin County

Welcome Center v. Brown, 466 U.S. at 152.  "[I]n the long run, experience teaches that strict

adherence to the procedural requirements specified by the legislature is the best guarantee of

evenhanded administration of the law."  Mohasco Corp. v. Silver, 447 U.S. at  826.

### 1.      Rule 4(m).

Anderson's motion is styled as a motion made pursuant to rule 12(b)(5) as informed by rule

4(m).  Rule 4(m) provides the time limitation – 120 days – within which service of process must be

executed.  Rule 4(m) provides that a district court must extend the time for service if a plaintiff

shows good cause.  See Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995)(holding that,

upon a showing of good cause, rule 4(m)'s exception is mandatory).  Furthermore, "if the plaintiff

fails to show good cause, the district court must still consider whether a permissible extension of

time may be warranted.  At that point the district court may in its discretion either dismiss the case

without prejudice or extend the time for service."  Espinoza v. United States, 52 F.3d at 841.  The

advisory committee notes to the 1993 amendment also state that rule 4(m) "authorizes the court to

relieve a plaintiff of the consequences of an application of this subdivision even if there is no good

cause shown." Fed. R. Civ. P. 4, Advisory Committee Notes at 56 (2008).

While a dismissal for failure to timely serve is without prejudice, rule 4(m) can interact with a statute of limitations, such that the dismissal without prejudice might, upon refiling, result in a defense that the statute of limitations on the claim has run. Some federal courts have held that, although the statute of limitations is tolled during the 120-days after filing, "if a plaintiff fails to effect service during the 120 days allotted by Rule 4(m), then the statute of limitations for the underlying claim again becomes applicable, and may serve to bar the claim if the statute runs before the plaintiff files another complaint." Ocasio v. Fashion Inst. of Tech., 86 F.Supp.2d 371, 376 (S.D.N.Y. 2000). See Frasca v. United States, 921 F.2d 450, 452, 453 (2d Cir. 1990).

### 2. Rule 12(b)(5).

Rule 12(b)(5) permits the dismissal of a complaint for "insufficiency of service of process." "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). Extensive participation in the litigation process may constitute acceptance of the Court's jurisdiction over all claims and defenses. See, e.g., Datskow v. Teledyne, 899 F.2d 1298, 1303 (2d Cir.)(finding that, even though faulty-service-of-process defense was asserted in timely answer, the defendant waived objection by participating in scheduling discovery and motion practice and attending conference with magistrate), cert. denied, 498 U.S. 854 (1990). In Datskow v. Teledyne, the defendant attended a scheduling conference with the magistrate judge, and participated in scheduling discovery and motion practice, without mentioning defective service of process. See 899 F.2d at 1303.

The United States Court of Appeals for the Fifth Circuit has recognized the "well-established rule that parties who choose to litigate actively on the merits thereby surrender any jurisdictional

objections." PaineWebber, Inc. v. Manhattan Private Bank (Switzerland), 260 F.3d 453, 459 (5th Cir. 2001). Further, "a party can be held to have waived a defense listed in Rule 12(h)(1) through conduct, such as extensive participation in the discovery process or other aspects of the litigation of the case even if the literal requirements of Rule 12(h)(1) have been met. . . ." 5C C. Wright & A. Miller, Federal Practice & Procedure § 1391 (3d ed. 2004).

3.      **Rule 12(h)(1).**

Rule 12 sets forth the requirements for a timely challenge to the Court's personal jurisdiction based on insufficiency of process. Pursuant to rule 12(h)(1), a party must include a defense of insufficiency of process in its first rule 12 motion or the defense is waived. Rule 12(h)(1) mandates that "[a] defense of lack of jurisdiction over the person, . . . insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g) . . . ." Fed. R. Civ. P. 12(h)(1).

## STATUTE OF LIMITATIONS FOR § 1983 CLAIMS

"While state law governs limitations and tolling issues, federal law determines the accrual of section 1983 claims." Fratus v. Deland, 49 F.3d 673, 765 (10th Cir. 1995). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." Id. "In general, under the federal discovery rule, claims accrue and [t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Alexander v. Oklahoma, 382 F.3d 1206, 1215 (10th Cir. 2004)(internal quotations omitted), cert. denied, 544 U.S. 1044 (2005). The focus is "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm. In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." Alexander v. Oklahoma, 382 F.3d at 1216 (internal citations omitted).

A three-year statute of limitations applies to Mata's claim under 42 U.S.C. § 1983 to enforce his First-Amendment rights.  Federal law borrows the three-year statute of limitations from the statute of limitations for personal injury set forth in NMSA 1978 § 37-1-8.  See Wilson v. Garcia, 471 U.S. 261, 280 (1985); Goodman v. Lukens Steel Co., 482 U.S. 656, 661-62 (1987).

### LAW REGARDING FIRST-AMENDMENT RETALIATION CLAIMS

"Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right."  Hartman v. Moore, 547 U.S. 250, 256 (2006)(quoting Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1988)).  It is therefore "settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."  Hartman v. Moore, 547 U.S. at 256 (citation omitted).

The Supreme Court of the United States has described at least two variations of First-Amendment retaliation claims.  First are those claims that arise when a public employee alleges that he has been fired or otherwise punished for speech criticizing the government.  See id. at 260 (citing Pickering v. Board of Education of Township High School Dist. 205, Will Cty., 391 U.S. 563, 566-67 (1968)).  In such cases, the Supreme Court has explained: "[O]ur discussions of the elements of the constitutional tort do not specify any necessary details about proof of a connection between the retaliatory animus and the discharge, which will depend on the circumstances."  Hartman v. Moore, 547 U.S. at 260.  Rather, "[t]he cases have simply taken the evidence of the motive and the discharge as sufficient for a circumstantial demonstration that the one caused the other."  Id.

In contrast, when a plaintiff asserts that the retaliation for protected conduct is a criminal charge, the "constitutional tort action will differ from this standard case in two ways."  Id.  First, in retaliatory prosecution cases, there is always a "distinct body of highly valuable circumstantial

-19-

evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge." Id. at 261.  Second, the existence of absolute prosecutorial immunity gives rise to an added layer of complexity in retaliatory prosecution suits.  Specifically, § 1983 actions for retaliatory prosecution

> will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute . . . .  [I]nstead, the defendant will be a non-prosecutor . . . who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory prosecution, but for successful retaliatory inducement to prosecute.

Hartman v. Moore, 547 U.S. at 262.

As a consequence, plaintiffs in retaliatory-prosecution cases must demonstrate a causal connection between one person's retaliatory animus and that person's injurious conduct, and a causal connection between the retaliatory animus of one person and that of another.  See id.  The allegation needed "both to bridge the gap between the nonprosecuting government agent's motive and the prosecution's action, and to address the presumption of prosecutorial regularity," is "the absence of probable cause."  Id.  In retaliatory-prosecution cases, the Supreme Court requires that lack of probable cause be pleaded and proven.  See id. at 266.

> In light of Hartman v. Moore, the Tenth Circuit has held that,

> [t]o establish a § 1983 retaliation claim against non-immune officials, [a plaintiff] must plead and prove (1) that she was engaged in a constitutionally protected activity; (2) that a defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to her exercise of her First Amendment speech rights. Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).  She also must plead and prove the absence of probable cause for the prosecution. Hartman [v. Moore], 126 S.Ct. at 1707.

Becker v. Kroll, 494 F.3d 904, 925 (10th Cir. 2007).

The probative weight that a conviction by a magistrate jury has on the existence or lack of

probable cause is an open question in First-Amendment retaliatory-prosecution claims.   The

Restatement (Second) of Torts states: "(1) The conviction of the accused by a magistrate or trial

court, although reversed by an appellate tribunal, conclusively establishes the existence of probable

cause, unless the conviction was obtained by fraud, perjury or other corrupt means."   Restatement

(Second) of Torts  § 667.   In support of the rule that a conviction can be conclusive evidence of

probable cause, the Restatement cites numerous state-court decisions.   See, e.g., Alexander v.

Laman, 225 Ark. 498, 283 S.W.2d 345 (1955); Bealmear v. Southern Cal. Edison Co., 22 Cal.2d

337, 139 P.2d 20 (1943); Addington v. Bates, 101 Colo. 293, 73 P.2d 529 (1937); Rogers v. W.T.

Grant Co., 326 So.2d 57 (Fla.App.1975); Hartshorn v. Smith, 104 Ga. 235, 30 S.E. 666 (1898);

Adams v. Bicknell, 126 Ind. 210, 25 N.E. 804 (1890); Early v. Harry's IGA, Inc., 223 Kan. 32, 573

P.2d 572 (1977); Taylor v. Nohalty, 404 S.W.2d 448 (Ky. 1966).   In one of the earliest cases

applying the rule that a properly obtained conviction is conclusive evidence of probable cause in a

malicious prosecution case, the Supreme Court of Georgia explained the rule's underlying rationale:

"Probable cause is defined to be the existence of such facts and circumstances as would excite the

belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the

person charged was guilty of the crime for which he was prosecuted."   Hartshorne v. Smith (State

Report Title: Hartshorn v. Smith), 30 S.E. 666, 667 (Ga. 1898).   Given that standard for probable

cause, the Hartshorne v. Smith court explained that,

> after a conviction by verdict, followed by sentence, it ceases to be a matter of
> conjecture, of argument, and of reasoning whether guilt could rationally be inferred
> from the facts admitted or proved; for such a state of things cannot occur but after
> full defense by the accused, with deliberation by the jury, aided by the court, upon
> all the evidence, as well explanatory as negative, offered by the accused, and, after
> all that, guilt was in fact inferred by a numerous body of men of competent
> understanding and integrity, and the court was also satisfied with it.

Hartshorne v. Smith, 30 S.E. at 667-68.

The Reporter's Notes to the <u>Restatement</u> show that other courts have adopted less severe versions of the rule.  Some courts, for example, have found that a conviction creates a prima-facie case or a presumption that probable cause existed, and a plaintiff can overcome the presumption with competent evidence demonstrating a lack of probable cause. <u>See</u>, <u>e.g.</u>, <u>J.C. Penney Co. v. Blush</u>, 356 So.2d 590 (Miss.1978).  <u>Goodrich v. Warner</u>, 21 Conn. 432, 1852 WL 635 (Conn. 1852), expresses the notion that, while an undisturbed conviction may be conclusive evidence, the possibility exists that, where there is an appeal from a judgment, "if, upon a full and fair trial, the evidence against the plaintiff was sufficient to satisfy the court of his guilt, that circumstance will afford strong presumptive evidence of probable cause, existing at that time," but, in "a subsequent trial, and perhaps upon other and further testimony, a jury might be of opinion, that it was not sufficient to justify a conviction."  <u>Goodrich v. Warner</u>, 21 Conn. 432, 1852 WL 635 *9.  In other words, the possibility remains that further evidence and testimony might illuminate reasons why probable cause did not exist.

Yet other courts have held that, when a conviction that is subject to a de novo review is reversed on review, the conviction is not conclusive or prima-facie evidence of probable cause.  <u>See Sestrich v. R.H. Macy & Co.</u>, 493 S.W.2d 52 (Mo. App. 1973); <u>Chapman v. City of Reno</u>, 85 Nev. 365, 455 P.2d 618 (1969).  The rule discussed in <u>Sestrich v. R.H. Macy & Co.</u> specifically allowed an exception to the presumption of probable cause for a conviction if the conviction was obtained in "police court."   493 S.W.2d at 55.  The "more appealing" justification for such a rule was that the police court suffered from various procedural irregularities and that the de novo trial was designed to protect litigants from those irregularities.  Thus, where the original conviction was obtained in the police court, and later overturned, the presumption of probable cause should drop out.  <u>See id.</u>

## LAW REGARDING ABSOLUTE IMMUNITY

Traditionally, the doctrine of prosecutorial immunity did not apply to other public officials. Police officers, governors, and other executive officials were entitled only to qualified immunity for actions performed in their official capacity.  See Imbler v. Pachtman, 424 U.S. 409, 421 (1976).  In Imbler v. Pachtman, the Supreme Court rejected the argument that qualified immunity would be adequate to protect prosecutors from the threat of litigation that affect their actions.  Prosecutors are, however, absolutely immune only for those activities "intimately associated with the judicial phase of the criminal process."  Id. at 430.

Absolute immunity does not extend to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate."  Id. at 430-31.

> We recognize that the duties of the prosecutor in his role as an advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom . . . .  Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.  At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. . . .

Id. at 431 n. 33.  Concluding that the challenged conduct in Imbler v. Pachtman fell on the advocacy side of the spectrum, the Supreme Court granted the prosecutors absolute immunity against the claim that they had procured false testimony during the course of a criminal trial.

The Supreme Court later extended the doctrine of absolute immunity to some prosecutorial conduct occurring before the trial.  In Burns v. Reed, 500 U.S. 478 (1991), a prosecutor was accused of:  (i) eliciting false testimony in a probable-cause hearing that led to the issuance of a search warrant; and (ii) advising police on inappropriate methods of interrogating a suspect.  Regarding the probable-cause hearing, the Supreme Court concluded that absolute immunity extended to "any

-23-

hearing before a tribunal which performed a judicial function," and included the presentation of testimony in support of an application for a search warrant.  Id. at 490 (internal quotation marks omitted).  Holding that the prosecutor's actions of appearing before a judge, and presenting evidence in support of a motion for a search warrant, involved the prosecutor's role as advocate for the State, rather than the role as administrator or investigative officer, the Supreme Court held that appearing at a probable-cause hearing was "intimately associated with the judicial phase of the criminal process."  Id. at 479 (internal citations and quotations omitted).  The Supreme Court read the plaintiff's claim narrowly, however, and did not consider the prosecutor's motivations in seeking the search warrant or his actions outside the courtroom in relation to his procurement of the warrant. See id. at 487-89 & n. 5.

Burns v. Reed did not, however, extend absolute immunity to every aspect of the prosecutor's legal advice to the police.  The Supreme Court concluded that advising police in the investigative phase of a criminal case could be too far removed from the judicial process to warrant extending immunity on that basis.  It thus rejected the argument that legal advice is categorically "of a judicial nature because the prosecutor is, like a judge, called upon to render opinions concerning the legality of conduct."  Id. at 493 (internal quotations omitted).  Noting that it has previously rejected the extension of absolute immunity to police officers, the Supreme Court in Burns v. Reed found it "incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following [that] advice."  Id. at 495.  To qualify for absolute immunity, then, an action must be "closely associated with the judicial process."  Id. at 495.

"Immunity extends to those activities 'intimately associated with the judicial phase of the criminal process,' which undoubtedly includes initiating criminal proceedings."  Becker v. Kroll,

494 F.3d 904, 925 (10th Cir. 2007)(quoting Imbler v. Pachtman, 424 U.S. at 430).  The court looks

to the "nature of the function performed, not the identity of the actor who performed it."  Buckley

v. Fitzsimmons, 509 U.S. 259, 269 (1993).  The Tenth Circuit recently confirmed the applicable

analysis where the prosecutor allegedly brought criminal charges in retaliation for public protest:

> A prosecutor's charging decisions are absolutely immune from civil suit for
> monetary damages.  *Hartman v. Moore*, 547 U.S. 250 . . . (2006)(citing *Imbler v.
> Pachtman*, 424 U.S. 409, 431 (1976)); *see also Mink v. Suthers*, 482 F.3d 1244,
> 1258-59 (10th Cir. 2007).   Immunity extends to those activities "intimately
> associated with the judicial phase of the criminal process," which undoubtedly
> includes initiating criminal proceedings.  *Imbler v. Pachman*, 424 U.S. 409, 430
> (1976).  This immunity applies even if the prosecutor files charges knowing he lacks
> probable cause.  *See id.* at 431 n. 34 (applying immunity even when prosecutor
> deliberately withholds exculpatory information from the court).

Becker v. Kroll, 494 F.3d 904, 925 (10th Cir. 2007).  Based on this reasoning, the Tenth Circuit held

that a First Amendment retaliation claim could not proceed against the prosecutor who initiated

criminal charges.  See Schenk v. Chavis, 461 F.3d 1043, 1046 (8th Cir. 2006)("The acts of

preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are

advocacy on behalf of the government.").

Given the functional analysis that the courts employ in determining whether absolute

immunity attaches, the identity of the party asserting the immunity is not important.  Thus, courts

have found it necessary to confront when and whether police officers might, like a prosecutor, enjoy

absolute immunity.  The United States Court of Appeals for the Second Circuit has held that,

"[w]here . . . the constitutional tort is the action of a police officer in initiating a baseless

prosecution, his role as a 'complaining witness' renders him liable to the victim under section 1983."

White v. Frank, 855 F.2d 956, 961 (2nd Cir. 1988).  In reaching its conclusion, the Second Circuit

explained that the "critical initial question [in determining the availability of an immunity defense

in § 1983 suits] is 'whether an official claiming immunity under § 1983 can point to a common law

counterpart to the privilege he asserts.'" White v. Frank, 855 F.2d at 961 (quoting Malley v. Briggs, 475 U.S. 335, 339-40 (1986)). According to the Second Circuit, the common law "made subtle distinctions" between witnesses whose role was to provide testimony and witnesses who played a role in initiating a prosecution – i.e., complaining witnesses. White v. Frank, 855 F.2d at 961. While testimonial witnesses enjoyed immunity from suit, complaining witnesses did not. See id. Given the historical background out of which § 1983 immunities emerge, the Supreme Court has rejected the notion that a police officer should enjoy absolutely immune for swearing out an arrest warrant. See Malley v. Briggs, 475 U.S. at 340. To the extent that an officer swearing out an arrest warrant resembles a complaining witness, complaining witnesses did not enjoy immunity, and neither should an officer. Rather, officers normally enjoy qualified immunity. See id. Based on the Supreme Court's explanation in Malley v. Briggs, the Second Circuit held that an officer who initiates a baseless prosecution is analogous to a complaining witness and does not enjoy absolute immunity. White v. Frank, 855 F.2d at 961.

## LAW REGARDING QUALIFIED IMMUNITY

As the Court has previously recognized in Holguin v. City of Albuquerque, No. CIV 05-0302 JB/RHS, 2006 U.S. Dist. LEXIS 29489 (D.N.M. March 1, 2006), a case in which Mata's counsel was counsel of record:

> Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982)(quoting Butz v. Economou, 438 U.S. 478, 506 (1978)). Qualified immunity therefore 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

2006 U.S. Dist. LEXIS 29489, at * 15-16. Qualified immunity protects federal and state officials from liability for discretionary functions and from "the unwarranted demands customarily imposed

upon those defending a long drawn-out lawsuit." Siegert v. Gilley, 500 U.S. 226, 232 (1991).   To balance the interests of the complaining individual, and the burden put upon the government official in defending such cases, "courts recognize the affirmative defense of qualified immunity, which protects 'all but the plainly incompetent or those who knowingly violate the law.'" Gross v. Pirtle, 245 F.3d 1151, 1155 (10th Cir. 2001)(quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

### 1.      Rationale for Qualified-Immunity Doctrine.

Qualified immunity is judicially created and rooted in public policy.  The fear of suit may have a chilling effect on official decision-making, seriously deterring officials from exercising judgment with the decisiveness important to their office.  See Richardson v. McKnight, 521 U.S. 399, 407 (1997)(describing the purposes of qualified immunity "as protecting government's ability to perform its traditional functions by providing immunity where necessary to preserve the ability of government officials to serve the public good or to ensure that talented candidates were not deterred by the threat of damages suits from entering public service.")(internal quotations omitted); Wyatt v. Cole, 504 U.S. 158, 165 (1992)(detailing the public policy basis for the qualified immunity privilege). In  Harlow v. Fitzgerald, 457 U.S. 800 (1982), the Supreme Court of the United States stated:

> It cannot be disputed seriously that claims frequently run against the innocent as well as the guilty -- at a cost not only to the defendant officials, but to society as a whole. . . . [T]here is the danger that fear of being sued will dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.

Id. at 814. (internal citations and quotations omitted).

### 2.      Two-Part Test for Qualified Immunity.

Until recently, courts were required to apply a two-step analysis in deciding whether a party is entitled to qualified immunity.  The broad protection afforded by qualified immunity gives

officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'"  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001)(quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996)).  When a defendant raises the affirmative defense of qualified immunity, "a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  Saucier v. Katz, 533 U.S. 194, 200 (2001), overruled in part by Pearson v. Callahan, No. 07-751, at 10-11 (January 21, 2008).  The qualified immunity privilege is "'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Id. at 200-201 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

  Once a defendant asserts the affirmative defense of qualified immunity, the burden then shifts to the plaintiff to establish a violation of a constitutional or statutory right by the defendant. See Gross v. Pirtle, 245 F.3d at 1155; Currier v. Doran, 242 F.3d 905, 917 (10th Cir. 2001), cert. denied, 534 U.S. 1019 (2001); Scull v. New Mexico, 236 F.3d 588, 595 (10th Cir. 2000).

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry. . . .  In the course of determining whether a constitutional right was violated on the premise alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established.  This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry.  The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

Saucier v. Katz, 533 U.S. at 201 (citations omitted).

  If a plaintiff meets his or her burden of establishing a violation of a constitutional right, he or she must demonstrate that the right alleged to have been violated was clearly established at the

time of the defendant's allegedly unlawful conduct.  See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995).  If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity.  See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186; Gross v. Pirtle, 245 F.3d at 1156; Albright v. Rodriguez, 51 F.3d at 1535.  "In short, although we will review the evidence in the light most favorable to the nonmoving party . . . the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity."  Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (citing Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001)).

### 3.    Clearly Established Law.

Qualified immunity shields federal officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. at 818.  A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."  Zweibon v. Mitchell, 720 F.2d 162, 172-173 (D.C. Cir. 1983), cert. denied, 469 U.S. 880 (1984).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Strepka v. Miller, 2001 WL 1475058 at * 5 (10th Cir. 2001)(citing Currier v. Doran, 242 F.3d at 923).  See Medina v. City and County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether the 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that

right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); See Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836 (10th Cir. 2005).

As the Supreme Court has observed, it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. at 640. However, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 635.

In the Tenth Circuit, to carry the burden of identifying a clearly established right, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." Trotter v. Regents of the University of New Mexico, 219 F.3d 1179, 1184 (10th Cir. 2000)(quoting Hannula v. City of Lakewood, 907 F.2d 129, 131 (10th Cir. 1990), abrogated on other grounds by Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991)). Moreover, that an official action may be in violation of an agency's internal procedures does not, in itself, violate any clearly established constitutional right. See Herring v. Keenan, 218 F.3d 1171, 1180-81 (10th Cir. 2000)(explaining "that the fact that an official discloses information in violation of his own internal procedures does not make the disclosure a violation of a clearly established constitutional right to privacy."), cert. denied, 534 U.S. 840 (2001); Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir. 2003)("In considering the 'objective legal reasonableness' of the state officer's actions, one relevant factor is whether the defendant relied on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question.").

The plaintiff's burden to establish that the law is clearly established "must be undertaken in light of the case's specific context, not as a broad proposition." Saucier v. Katz, 533 U.S. at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether

it would be clear to a reasonable officer that his conduct was unlawful in the situation." Id. at 202. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Mimics, Inc. v. Village of Angel Fire, 394 F.3d at 842 (internal citations and quotations omitted). If a reasonable person could have believed that the actions were lawful, "defendants are entitled to dismissal before discovery." Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992).

### 4.   Pearson v. Callahan.

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified-immunity defense. In Pearson v. Callahan, No. 07-751, the Supreme Court held that, "while the sequence set forth [in Saucier v. Katz] is often appropriate, it should no longer be regarded as mandatory." No. 07-751, at 10. Rather, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." Id. The Supreme Court also noted that, while no longer mandatory, the protocol outlined in Saucier v. Katz would often be beneficial. See id. at 11.

While leaving the determination whether to adhere to the Saucier v. Katz sequence in the lower courts' sound discretion, the Supreme Court mentioned various circumstances where such sequencing might be undesirable. For example, there are cases in which it is plain that a right is not clearly established, but less obvious whether such a right in fact exists. See Pearson v. Callahan, 07-751, at 11. Under such circumstances, it might be considered a waste of resources to engage in analysis under the first prong – whether a constitutional right was violated – when it is already obvious that, even if such a right existed, it was not clearly established. See id.

Another concern arises out of the fact that qualified immunity is usually raised at the pleading stage.  The Supreme Court in Pearson v. Callahan observed that the "two-step" inquiry can be an uncomfortable exercise where "the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed."  07-751, at 13 (brackets in original)(internal quotation marks and citation omitted).  Under such circumstances, it may be more advantageous to analyze whether the asserted right was clearly established rather than reaching the merits.

Adherence to Saucier v. Katz also poses the potential to lead to bad decision-making.  For example, in some cases that the district courts encounter, "the briefing of constitutional questions is woefully inadequate," and "constitutional questions may be prematurely and incorrectly decided in cases where they are not well presented."  Pearson v. Callahan, 07-751, at 14 (internal quotation marks and citations omitted).  Moreover, while a court might adhere to the formalities of Saucier v. Katz in discussing the two prongs in sequence, the court's internal processes might involve making a decision based on whether the right was clearly established and only then turning to the more difficult question of the merits.  See Pearson v. Callahan, 07-751, at 14.  In some such cases, there is a risk that the district court will not devote as much care as it should to deciding the constitutional issue.  See id.

"Rigid adherence to the Saucier rule may make it hard for affected parties to obtain appellate review of constitutional decisions that may have a serious prospective effect on their operations."  Pearson v. Callahan, 07-751, at 14.  For example, where a court holds that a constitutional violation occurred, but that the violation was not clearly established, there is an appearance of unappealability, because the defendant is the prevailing party on the issue of qualified immunity.  At the same time, the prevailing party faces the choice of changing its operations to comport with the new finding that it violated a constitutional right, or of adhering to its established practice, even though that practice

-32-

has now been held to result in a violation of constitutional rights.  Such a choice is difficult to take for a defendant who, in effect, has no chance to appeal the determination that a constitutional right in fact occurred.  See id. at 14.

Finally, an obligation to strictly follow Saucier v. Katz runs up against the "general rule of constitutional avoidance and runs counter to the older, wiser counsel not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."  Pearson v. Callahan, 07-751, at 15 (internal quotation marks and citations omitted).  Furthermore, the first prong's purpose of furthering the development of constitutional law might not be meaningfully advanced in cases where the determination whether a right was violated is so fact bound that it is unlikely to provide guidance in future cases.  See id. at 12.

## LAW REGARDING AMENDMENTS TO PLEADINGS

Parties may request leave to amend their pleadings pursuant to rule 15(a) of the Federal Rules of Civil Procedure.  While a party may amend its pleadings once, as a matter of course, in accordance with the procedure laid out in rule 15, a party may also request leave to amend at the court's discretion.  Under such circumstances, rule 15(a) instructs courts to "freely give leave when justice requires."  Fed. R. Civ. P. 15(a)(2).  See Foman v. Davis, 371 U.S. 178 (1962).  The Tenth Circuit has also stated that "[a] court should freely grant leave to amend when justice so requires."  Gillette v. Tansy, 17 F.3d 308, 313 (1994).  Moreover, when a court refuses to allow a party to amend its pleadings, the court must state the reasoning for its refusal.  See id.

## ANALYSIS

After careful review of the facts surrounding Mata's failure to timely serve process and of the allegations in Mata's Complaint, the Court finds it appropriate to excuse Mata of the consequences of the delay in service.  While Mata has not demonstrated good cause for the delay

in service, the Court sees prudential reasons for excusing the delay.  The Court also finds that Mata

states a claim upon which relief can be granted.  Namely, he has pled allegations that, if true, would

establish the essential elements of a retaliatory-prosecution claim.  His First Amended Complaint,

fairly read, contains allegations that Anderson initiated a prosecution against him without probable

cause.  While the Court takes judicial notice of the underlying criminal case's record, which

indicates that a magistrate jury convicted Mata, the Court does not consider that conviction to be

conclusive proof of the existence of probable cause.  Mata therefore has the opportunity to present

evidence that probable cause was, in fact, lacking.  Anderson, as the officer who initiated the

criminal charges in the underlying criminal case, does not enjoy absolute immunity under the

circumstances of this case.  Moreover, he does not enjoy qualified immunity, because retaliatory

prosecution has been clearly established as a constitutional violation, and the allegations in the First

Amended Complaint, if taken as true, establish such a violation.  The Court will therefore deny the

motion to dismiss.  Furthermore, the Court will grant Mata's request to amend his First Amendment

Complaint.

## I.       **ANDERSON HAS NOT WAIVED HIS RULE 12(b)(5) DEFENSE.**

In addition to arguing for a finding of "good cause," Mata argues that Anderson waived his

12(b)(5) defense.  See Response at 3-4.  In support of this argument, Mata cites to Datskow v.

Teledyne, 899 F.2d at 1303.  The circumstances of Datskow v. Teledyne, however, are different

from those that this case presents.  In Datskow v. Teledyne, the defendant moved for dismissal for

lack of personal jurisdiction based on defective service of process only after it had participated in

a conference before a magistrate, discovery scheduling, and motion practice.  See 899 F.2d at 1303.

Given the defendant's extensive participation in the litigation, the Second Circuit observed that the

defendant had opportunities to complain about the defect in service, but allowed the statute of

limitations to run on the plaintiff's claims before doing so.  Under those circumstances, the Second Circuit found it improper to credit the defendant for seeking dismissal for defects in the service of process "that could have been readily cured during the limitations period if defendant had promptly complained." Id.

Anderson has not engaged in such gamesmanship.  As Mata admits, Anderson has, at all times, asserted Mata's failure to accomplish timely service.  Unlike the situation in Datskow v. Teledyne, Anderson filed an Answer and a rule 12 motion less than twenty days after he was served.  Anderson's motion was the first rule 12 motion and included the challenge to personal jurisdiction based on insufficiency of process.  There is no allegation that Anderson quietly allowed the statute of limitations to slip by while still participating in the litigation.  Rather, Anderson acted as promptly as practicable and raised the defense of failure to timely serve in the first motion.

If the Court were to consider Anderson's conduct to constitute waiver, improperly served defendants would find it difficult to find a situation in which the rule 12(b)(5) defense could be raised.  The Court believes it would be unfair to hold that Anderson's litigation conduct, which can be characterized as prompt, thorough, and forthright, as somehow constituting a waiver of the 12(b)(5) defense.

## II.    THE COURT WILL EXCUSE MATA'S FAILURE TO TIMELY SERVE PROCESS.

Mata failed, without justification,  to properly serve Anderson within the 120 days that rule 4(m) requires.  Mata's Complaint and Amended Complaint were not timely served, and Mata has no good-cause explanation for the delay.  Contrary to Anderson's assertions, however, there is justifiable reason for the Court to exercise its discretion to lengthen the time for effecting service.

### A.    SERVICE OF PROCESS WAS UNTIMELY.

Mata does not dispute that service was not timely.  Mata filed his suit on January 11, 2008.

Mata was required to serve Anderson by May 10, 2008.  See Fed. R. Civ. P. 4(m) ("If a defendant

is not served within 120 days after the complaint is filed, the court – on motion or on its own after

notice to the plaintiff –  must dismiss the action without prejudice against that defendant. . . .").

Mata waited until June 19, 2008 to serve Anderson, approximately forty days after the expiration

of the 120-day deadline.  Anderson contends that the Court should dismiss Mata's Complaint for

untimely service.  Anderson further asserts that the statute of limitations bars Mata's lawsuit because

of his failure to effect timely service.

### B.  MATA HAS NOT ESTABLISHED GOOD CAUSE REQUIRING AN EXTENSION OF TIME TO SERVE ANDERSON.

Mata suggests that the time for service can be extended: (i) if a litigant shows good cause;

and (ii) in the Court's discretion.  See Response at 1-2.  Although he recognizes that a litigant's

showing of "good cause" can excuse untimely service, Mata makes little effort to demonstrate that

there was "good cause" for his month-and-a-half delay in serving Anderson.  See Response at 2-6.

At the hearing, Mata explained that he had asked his client for various pieces of evidence so that he

could expand the First Amended Complaint to include more allegations and possibly more causes

of action.  See Tr. at 20:10-19 (Montoya).  The Court does not view the excuse that Mata's counsel

proffered as good cause.  Rather, it gives the impression that Mata, through his attorney, was not

completely vigilant in keeping up with the progress of this lawsuit.  Counsel's "inadvertence" is not

sufficient to establish good cause.  Wei v. State of Hawaii, 763 F.2d 370, 372 (9th Cir. 1985).

Anderson insists that the "good-cause exception" to rule 4 in the Tenth Circuit is narrow

and protects "only those plaintiffs who have been meticulous in their efforts to comply with the

Rule." Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1438 (10th Cir. 1994).  The

Tenth Circuit in Despain v. Salt Lake Area Metro Gang Unit was dealing with rule 4(j), which

became rule 4(m) under the 1993 amendments to the Federal Rules of Civil Procedure. The Court is not certain what impact the amendments reflected in rule 4(m) would have on the holding expressed in <u>Despain v. Salt Lake Area Metro Gang Unit</u>. The Court need not decide that question because it finds that Mata has not demonstrated good cause and is therefore not entitled to avail himself of the good-cause exception.

### C.   THE COURT WILL EXERCISE ITS DISCRETION TO EXTEND THE PERIOD OF TIME TO SERVE ANDERSON BY FORTY DAYS.

Anderson argues that Mata has not demonstrated any of the prudential reasons for extending the time for service that has caused the Court to grant limited extensions for service in prior cases. <u>See</u>, <u>e.g.</u>, <u>Martinez-Jones v. Dulce Indep. Schs.</u>, 2008 U.S. Dist. LEXIS 42321 (D.N.M. Mar. 14, 2008)(pro se plaintiff); <u>Davis v. San Juan County</u>, 2006 U.S. LEXIS 27263 (D.N.M. Jan. 11, 2006)(San Juan College's closure for 12 days). Mata's counsel has filed numerous lawsuits against the City of Farmington, and knows how to serve the City and its employees. Mata is represented by counsel and offers no allegation that Anderson was evading service or that attempts to timely serve were ineffective. Indeed, Mata does not offer any reason for his failure to timely serve.

Nevertheless, the Court concludes that dismissal of this action is not appropriate. The delay was not inordinate, prejudicial, or intentional, and the First Amended Complaint has been served. Anderson has been, albeit untimely, properly served, and he has filed an Answer. The argument that he raises is not one of invalidity of the service for any reason other than timeliness. The service was not effected within the 120 days that the rule requires, but was more timely effected than in many other cases in which the Court has issued warnings to plaintiffs and given a deadline within which to serve the complaint.

Anderson has now been served with the summons and the Complaint in this case. The Court

routinely issues notices to plaintiffs in civil actions advising them when a complaint has not been served and setting a deadline in which to do so.  Mata did not, however, wait for such an order to issue from the Court, but instead proceeded to attempt to rectify any delay in service by serving Anderson before any court-issued warning.  In that sense, Mata has been more diligent that the plaintiffs in other cases who have effected service only after the Court issues them a notice that dismissal is imminent.

Anderson contends that the Court's exercise of its discretion to lengthen the time for effecting service will prejudice him, because it will deprive him of a statute of limitations defense that should otherwise be available to him if, in accordance with rule 4(m), the case is dismissed without prejudice.  The parties have a legitimate dispute whether the statute of limitations would bar refiling.  The Court would apply the three-year statute of limitations for personal injury set forth in NMSA 1978 § 37-1-8.  See Wilson v. Garcia, 471 U.S. at 280; Goodman v. Lukens Steel Co., 482 U.S. at 661-62.  The parties do not dispute that a three-year limitations period applies.  Rather, they dispute when Mata's cause of action accrued.  "In general, under the federal discovery rule, claims accrue and [t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action."  Alexander v. Oklahoma, 382 F.3d at 1215.

Anderson maintains that the cause of action accrued when the criminal charges upon which Mata sues were filed.  If that indeed represents when the statute of limitations began to run, then the cause of action accrued on January 11, 2005, and Anderson would be correct in pointing out that Mata filed the original Complaint in this case the day before the statute of limitations period would have run.  As Anderson has urged in his briefing, the limitations period may have been tolled for the 120-day period that Mata had to serve process.  Anderson contends, however, that, once the 120-

days past, the clock began running again.  In this case, according to Anderson, the clock ran out.

Mata insists, however, that when a litigant seeks damages in a § 1983 suit and a favorable judgment would necessarily imply the invalidity of a criminal conviction or sentence, the cause of action does not accrue until the sentence or conviction is invalidated.  Mata's draws support for his position from Heck v. Humphrey, 512 U.S. 477 (1994).  Mata contends that Heck v. Humphrey adopted such a rule to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions.  The implication would be that Mata could not bring his retaliatory-prosecution claim until after the district court jury acquitted him of all charges. Because the acquittal came much later, Mata would still be well within the limitations period for his claim.

Admittedly, the date on which Mata's cause of action accrued is a complex question.  The Court need not decide the statute-of-limitations issue at this time, because the Court will excuse Mata of the consequences of missing the deadline to serve process.  If anything, the specter of Mata's claim being barred by the statute of limitations weighs against dismissal for failure to timely serve in this case. The Advisory Committee contemplated the circumstances presented in this case, in which the statute of limitations would potentially bar refiling of the lawsuit after dismissal without prejudice under rule 4(m).  The Advisory Committee States: "Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service."  Advisory Committee Notes to the 1993 Amendment at 56.

The Tenth Circuit has stated:

We need not decide whether the provisions of new Rule 4(m) apply to this case.

> Under the new rule, the grant of additional time remains discretionary with the district court. That a plaintiff's claims will be time-barred if an action is dismissed for failure to effect service within 120 days does not mandate an extension of time under new Rule 4(m). See Fed.R.Civ.P. 4(m) advisory committee's note ("Relief *may* be justified, for example, if the applicable statute of limitations would bar the refiled action....")(Emphasis added.).

Cloyd v. Arthur Andersen & Co., Inc., 25 F.3d 1056 (Table)(10th Cir. 1994).   The Tenth Circuit affirmed the district court's dismissal for defects under rule 4(j), which was the predecessor to rule 4(m).  The Tenth Circuit noted that its review was for abuse of discretion, and found that the district court had not abused its discretion in refusing to grant an extension.  See Cloyd v. Arthur Andersen & Co., Inc., 25 F.3d 1056 (Table) *3.

Courts in the other circuits appear to be in agreement that the potential running of the statute of limitations is a factor that weighs against dismissal.  Citing the Advisory Committee Notes, the United States Court of Appeals for the Eleventh Circuit has held that district courts should consider the possible running of the statute of limitations when deciding whether to allow an extension for service of process.  See Lepone-Dempsey v. Carroll County Com'rs, 476 F.3d 1277, 1282 (11th Cir. 2007).  In Lepone-Dempsey v. Carroll County Com'rs, the district court had dismissed without prejudice a plaintiff's claim for untimely service even though the statute of limitations had already run.  See id.  The Eleventh Circuit stated: "Although the running of the statute of limitations, which barred the plaintiffs from refiling their claims, does not require that the district court extend time for service of process under Rule 4(m), it was incumbent upon the district court to at least consider this factor." Lepone-Dempsey v. Carroll County Com'rs, 476 F.3d at 1282.  See Mann v. American Airlines, 324 F.3d 1088, 1090-91(9th Cir. 2003)(noting that district court has discretion to extend deadline for service of process when the statute of limitations might bar refiling)(citing Advisory Committee Notes to the 1993 Amendment); Panaras v. Liquid Carbonic Industries Corp., 94 F.3d

338, 341 (7th Cir. 1996)(stating that "it is incumbent" on district courts to consider the possible passage of the statute of limitations when considering whether to grant an extension under rule 4(m)).  The United States Court of Appeals for the Third Circuit has explained that, "[i]nterpreting this rule, under which the court may extend the time for service to avoid the bar of limitations, to authorize the court to refuse to extend it so the defendant may gain the benefit of that bar appears to us to be inconsistent with its purpose."  Boley v. Kaymark, 123 F.3d 756, 758 (3rd Cir. 1997).

The Court agrees with the Advisory Committee and notes that, in this case, dismissing Mata's case for failure to serve process would be overly harsh.  The Tenth Circuit has at least noted that a district court may grant an extension if the statute of limitations might bar refiling.  Moreover, the plaintiff in Cloyd v. Arthur Andersen & Co., Inc. waited until the last minute to file his cause of action and then waited until the last minute to serve process.  See Cloyd v. Arthur Andersen & Co., Inc., 25 F.3d 1056 (Table) *3.  Given that the plaintiff waited until the last minute, the Tenth Circuit agreed with the district court that the plaintiff should have taken care to make sure that the summons was not defective.  See id.   In this case, it is not clear that Mata waited until the last minute.  Rather, Mata appears to have a good-faith basis for believing that his cause of action did not accrue until much later than when Anderson contends.  The Court believes that Mata has not shown the same lack of diligence as the plaintiff in Cloyd v. Arthur Andersen & Co., Inc.  If the statute of limitations would indeed bar Mata's claim – and the Court need not decide that question for purposes of making a determination on this motion – the rule 4(m) dismissal might result in total elimination of Mata's claims.  That is a result that rule 4(m) typically does not contemplate.  The Court therefore views the potential statute of limitations defense as a factor weighing against, rather than in favor, of dismissal.

### III.    THE COURT WILL CONSIDER CERTAIN EXHIBITS OUTSIDE THE COMPLAINT IN DECIDING ON THE MOTION TO DISMISS ON THE PLEADING.

Normally, a court must convert a motion to dismiss into a motion for summary judgment if matters outside the pleadings are presented and not excluded. See Fed. R. Civ. P. 12(b).  The Court may, however, take judicial notice of materials in the public record.  See Van Woudenberg v. Gibson, 211 F.3d at 568.  The Court may also consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute their authenticity. See Jacobsen v. Deseret Book Co., 287 F.3d at 941-42.

While the Court will rely on certain materials outside the First Amended Complaint to decide this motion, the Court will not treat the motion as a motion for summary judgment.  The documents on which the Court relies are documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute.  Accordingly, the Court relies on the following documents in deciding this motion for dismissal on the pleadings: (i) Exhibit A to the Answer, The Settlement Notice (ii) Exhibit B to the Motion, the criminal complaint and attached statement of probable cause, filed July 7, 2008 (Doc. 8-3); (iii) Exhibit C to Answer, Criminal Docket Sheet, filed July 7, 2008 (Doc. 8-4); and (iv) Exhibit E to Answer, Magistrate Verdict Forms.  While the Court mentioned in the factual background of this opinion other documents that fall outside the pleadings and outside this list of documents that the Court has chosen to admit for purposes of this motion, the Court will not consider those other documents in deciding this motion.  Such documents not admitted shall be considered as providing only background information for purposes of fully and clearly explaining the context of this lawsuit.

Each of the extra-pleading documents upon which the Court relies are court documents from

the underlying criminal case and from the first lawsuit.  They are therefore part of the public record.

The Court can properly take judicial notice of such documents without converting the motion to

dismiss into a motion for summary judgment.    See Van Woudenberg v. Gibson, 211 F.3d at 568.

Moreover, in the First Amended Complaint, Mata alleges that Anderson "filed a criminal complaint

against Juan Mata."  First Amended Complaint ¶ 13, at 3.  Mata also mentions Anderson's "act of

filing criminal charges" against him.  Id. ¶ 19, at 4.  The criminal complaint's contents are central

to Mata's claims, given that he is suing for retaliatory prosecution based on the alleged wrongfully

brought criminal charges which the criminal complaint details.  Given that the Complaint refers to

the criminal complaint, that the criminal complaint is central to the claim, and that Anderson does

not dispute the criminal complaint's authenticity – in fact, Anderson is the one who attached the

criminal complaint and accompanying statement of probable cause – the Court will admit it for

purposes of this motion without converting the motion to summary judgment.  See Jacobsen v.

Deseret Book Co., 287 F.3d at 941-42.

        In refusing to convert this motion into one for summary judgment, the Court also notes that

Anderson agreed with the Court at the hearing that the Court should view this motion as a motion

to dismiss.  See Tr. at 46:23-47:3 (Court, Walker).  Anderson was the party to initially submit

exhibits beyond the pleadings for the Court's consideration, but Anderson has not sought for the

Court to convert this into a motion for summary judgment.  Mata has similarly not attempted to have

this motion converted into one for summary judgment.  The Court therefore believes that the course

of action which it has followed regarding the exhibits accompanying the pleadings and the Motion

comports with the parties' expectations.

IV.   **MATA'S COMPLAINT SUFFICIENTLY ALLEGES A CAUSE OF ACTION FOR VIOLATION OF HIS FIRST-AMENDMENT RIGHTS.**

Anderson contends that Mata's Amended Complaint fails to state a cause of action for First-Amendment retaliation.   The primary arguments Anderson marshals in support of this contention are: (i) that Mata's claim that Anderson retaliated for Mata's successful settlement of a prior lawsuit falls outside the realm of possibility because the settlement happened after the charges forming the basis of this lawsuit were brought; (ii) that Mata failed to allege lack of probable cause, which is an essential element to a retaliatory-prosecution claim under 42 U.S.C. § 1983; and (iii) that, even if Mata had alleged lack of probable cause, the magistrate-jury conviction, although overturned at the de-novo trial, constitutes conclusive proof that probable cause existed.   The Court does not find these arguments to be persuasive.   Mata does not state in his First Amended Complaint merely that Anderson retaliated against him for obtaining a settlement.   Rather, Mata also makes broader allegations that can encompass more than just retaliation for the settlement.   Furthermore, Mata's First Amended Complaint, fairly interpreted, sufficiently states a claim for retaliatory prosecution. The Court also finds good reason to reject the notion that the magistrate-jury conviction constituted conclusive proof of the existence of probable cause.   Rather, although the conviction constitutes strong evidence that probable cause existed, Mata should be able to gather evidence and further testimony that probable cause was lacking at the time Anderson brought the charges.

A.   **MATA'S ALLEGATIONS ENCOMPASS MORE CONDUCT THAN RETALIATION FOR SUCCESSFULLY OBTAINING A SETTLEMENT.**

Mata has admitted that his First Amended Complaint is "inartfully drafted."   Response at 6. Nevertheless, Mata's poor drafting does not prove fatal in this case.   A Court considering a motion for judgment on the pleadings must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."   Park Univ. Enterprises,

Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d at 1244.  At the same time, the standards for evaluating 12(b)(6) motions apply.  See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d at 1160. Accordingly, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).  The plaintiff must be able to "nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (internal quotation marks and citations omitted).

Anderson contends that Mata's suit is premised on a faulty factual predicate – namely, that Anderson "filed" criminal charges against Mata to retaliate for Mata's successful settlement of the First Mata case.  First Amended Complaint ¶¶ 6, 8, 17, at 2-4.  The First Amended Complaint states: "In early January 2005, the Farmington Daily Times published an article that informed the public that a civil rights suit brought against several Farmington Police Officers had settled for $ 70,000." First Amended Complaint ¶ 6, at 2.  The First Amended Complaint then goes on to state that "news coverage of the settlement by Juan Mata and his family members against the Farmington Police Department caused Defendant Anderson to become enraged." Id. ¶ 7, at 2.  The criminal complaint indicates that charges were brought against Mata on January 11, 2005, see Criminal Complaint at 1, and that the first lawsuit settled in November 2005 – over eleven months after the criminal charges underlying this lawsuit were filed, see Settlement Notice at 1.  In other words, it appears, at first glance, that Mata's suit is based on Anderson retaliating for something – the settlement – that came nearly a year after the alleged retaliatory act occurred.

Aside from rendering Mata's claim somewhat ridiculous, Anderson's argument regarding the faulty time line to suggest that Mata cannot establish a required element of his First-Amendment

retaliation claim – that Anderson had any intent to retaliate against him as a result of his First-Amendment protected activity.   Anderson could not have intended to retaliate because of the settlement of the first <u>Mata</u> civil-rights case, because that first <u>Mata</u> case did not settle for some eleven months after Anderson initiated criminal charges against Mata.

If Anderson's supposed retaliation for the settlement were the extent of the allegations that the Court could fairly infer from the First Amended Complaint, Mata would not succeed in nudging his claim across the line from implausible to plausible.   Such an interpretation of the First Amended Complaint, however, does not comport with the liberal construction of pleadings that rule 12(b)(6) requires.   The First Amended Complaint, read as a whole, makes a broader set of allegations against Anderson.   In paragraph ten, for example, Mata asserts that Anderson was motivated by a desire to retaliate against Juan Mata for his "outspoke criticism of Farmington Police officers, particularly Officer Mike Briseno."   First Amended Complaint ¶ 10, at 3.   In paragraph eleven, Mata further alleges that "Defendant knew that Juan Mata had protested against Mike Briseno outside the police department, which also angered Defendant."   First Amended Complaint ¶ 11, at 3.   Finally, in paragraph 13, Mata states that Anderson retaliated against him "for Mata's exercise of his First Amendment rights, including but not limited to protesting and petitioning the Court for redress." First Amended Complaint ¶ 13, at 3.

Viewed together, then, paragraphs ten through thirteen contain allegations of retaliation for protesting and First-Amendment activity unrelated to the settlement of the first lawsuit.   There is no suggestion that the other First-Amendment activity occurred after the filing of charges, or that Anderson's retaliation for that activity is otherwise implausible.   Moreover, paragraphs ten through thirteen contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."   <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. at 1965.   Rather, in those paragraphs,

Mata refers to specific facts, including protest activity targeting a Farmington police officer, that could plausibly be an impetus for Anderson to retaliate.

Anderson conceded at the hearing that the First Amended Complaint contains allegations that are rooted in First-Amendment activity not rooted in the November 2005 settlement.  See Tr. at 12:10-13 (Walker).  The time-line problem that Anderson so strenuously argues is consequently a non-issue.  What is important on this motion to dismiss is that Mata has pled facts that, if taken as true, establish retaliatory intent.  Specifically, Mata alleges that Anderson "knew that Juan Mata had protested against [one of Anderson's fellow officers] outside the police department," that Anderson "was aware that Plaintiff had exercised his First Amendment rights in picketing the Farmington Police Department," that "Anderson was well aware that Plaintiff had engaged in no criminal activity," and that Anderson "decided to teach [Mata] a lesson" by filing criminal charges "motivated solely by a desire to retaliate against Juan Mata . . . for his outspoken criticism of Farmington Police officers, particularly Officer Mike Briseno."  First Amended Complaint ¶¶ 9-11, 16, 18.

Anderson maintains that, even if the "protected activity" is expanded beyond Mata's allegations to include the act of filing the first Mata case and/or Mata's October 2004 protests against Briseno, Mata can offer no more than his conjecture that Anderson, who was not named as a defendant in the first Mata case, and whose conduct was not the subject of any protests by Mata, nevertheless intended to retaliate against Mata for that protected activity.  Anderson insists that the evidence is insufficient to establish Mata's claim.  In light of the standard for deciding a motion to dismiss on the pleadings, however, the Court must take Mata's allegations as true.  Those allegations, rather than amounting to mere conjecture, constitute a set of specific factual assertions that, if true, and if understood as a whole, state a claim for retaliatory prosecution.  Sufficiency of

the evidence is not the inquiry on a motion to dismiss.

The Court therefore believes that Mata has pled sufficient facts to survive Anderson's attack on the plausibility of the factual time line upon which this lawsuit is based.  There is therefore no reason to find references to the January 2005 newspaper coverage or to the settlement as being the source of retaliation, to be fatal.  The overall gist of the First Amended Complaint sufficiently establishes a plausible factual predicate, if the allegations are taken as true – as they must be for purposes of this motion to dismiss.  Thus, while the realities of the space-time continuum might preclude a realistic possibility of the retaliation being for a settlement that occurred before the retaliatory acts, the space-time continuum appears to allow for the broader claim that the retaliation was a result of "outspoken criticism," "protest[ing] against Mike Briseno outside the police department," and "exercise of . . . First Amendment rights."  First Amended Complaint ¶¶ 10-11 & 13, at 3.

## B.   MATA HAS ALLEGED ALL OF THE ESSENTIAL ELEMENTS OF HIS CLAIM, INCLUDING A LACK OF PROBABLE CAUSE.

To sustain a claim for First Amendment retaliatory prosecution, a plaintiff must allege and prove

> (1) that she was engaged in a constitutionally protected activity; (2) that a defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to her exercise of her First Amendment speech rights. Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000).  She also must plead and prove the absence of probable cause for the prosecution. Hartman [v. Moore], 126 S.Ct. at 1707.

Becker v. Kroll, 494 F.3d 904, 925 (10th Cir. 2007).  Anderson focuses his attack on the last element, and insists that Mata bases his claim exclusively on retaliatory motive and fails to allege a lack of probable cause.  The Court finds, however, that Mata has alleged – at least implicitly – lack

of probable cause.

While the Supreme Court has stated that the probable-cause standard is "incapable of precise definition," Maryland v. Pringle, 540 U.S. 366, 371 (2003), "[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt, . . . , and that the belief of guilt must be particularized with respect to the person to be searched or seized . . . ," id. at 371.  In other words, probable cause at least presupposes that there be  reasonable and particularized grounds for believe that a suspect is guilty of some crime.

While Mata never invokes the "magic words" of probable cause, he makes several factual assertions that are tantamount to a lack of probable cause.  In paragraphs fifteen of the First Amended Complaint, Mata contends that he "engaged in no activity that would legitimately give rise to a criminal complaint."  First Amended Complaint ¶ 15, at 4.  In paragraph sixteen, Mata further asserts that "Defendant Anderson was well aware that Plaintiff had engaged in no criminal activity."  Id. ¶ 16, at 4.

Paragraphs fifteen and sixteen of the First Amended Complaint are worded such that one of their necessary implications is that Anderson did not have probable cause.  If an action cannot legitimately give rise to a criminal complaint, it follows that an officer, such as Anderson, could not articulate facts describing criminal conduct upon which to swear out a criminal complaint.  Paragraph sixteen speaks more directly to probable cause.  If Defendant Anderson was well aware that Mata engaged in no criminal activity, he was, or should have been aware, that he did not have grounds for believe that Mata was guilty of criminal activity.  Without such grounds for belief, Anderson would have had no probable cause to initiate criminal charges against Mata.  Simply stated, if paragraph sixteen of the First Amended Complaint is true, Anderson's awareness that Mata engaged in no criminal activity equates to an assertion that Anderson had no probable cause.

-49-

Finally, in paragraph twenty-one, Mata alleges that Anderson solicited the continued prosecution of Mata, "even though Anderson knew or had reason to know that the charges against Juan Mata were invalid." First Amended Complaint ¶ 21, at 4. Again, albeit without invoking any talismanic verbal formulas, Mata makes an allegation that, if taken as true, necessarily implicates a lack of probable cause. Mata has therefore sufficiently pled lack of probable cause. And Anderson has not contended, nor could he reasonably, that allegations establishing the other elements of retaliatory prosecution are missing from within the four corners of the First Amended Complaint.

### C. THE MAGISTRATE-JURY CONVICTION IS NOT CONCLUSIVE EVIDENCE THAT ANDERSON HAD PROBABLE CAUSE TO INITIATE CRIMINAL PROCEEDINGS AGAINST MATA.

Anderson argues that, even if Mata has sufficiently pled lack of probable cause, the Court should dismiss the First-Amendment retaliation claim because the magistrate-court jury conviction conclusively establishes that Anderson had probable cause.[4] The primary justification that Anderson offers for such a finding is the rule from the Restatement (Second) of Torts, which, in the context of malicious-prosecution lawsuits, states: "(1) The conviction of the accused by a magistrate or trial court, although reversed by an appellate tribunal, conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means." Restatement (Second) of Torts § 667. Anderson also cites one federal case in which a district court in the Northern District of Texas decided to follow the "great weight of authority" which, in its view,

---

[4] The relative probative weight that the magistrate-trial conviction should have on the existence of probable cause also has bearing whether Anderson should enjoy qualified immunity for his actions. The Court's perception of the briefing and argument at the hearing is that this issue weighs both on whether Mata states a claim and on whether any constitutional violation that Anderson might have committed was clearly established. The Court will discuss the two questions separately for the sake of clarity.

supports the Restatement (Second) of Torts rule.  Adcox v. Safeway Stores, Inc., 512 F.Supp. at 454.

While the district court in Adcox v. Safeway Stores, Inc. approved of the   Restatement (Second) of Torts rule, it did so in the context of projecting what the Texas courts would do in a malicious-prosecution case in that state.  See 512 F.Supp. at 454.  No federal courts appear to have decided whether, as a matter of federal constitutional law, in a First-Amendment retaliatory-prosecution claim brought under 42 U.S.C. § 1983, a conviction obtained in a state's magistrate court, which is later overturned in a de novo trial, constitutes conclusive evidence of probable cause, establishes a presumption, or is merely evidence of probable cause.  At least under the circumstances of this case, the Court finds that the magistrate jury's conviction, which was overturned in a de novo trial, is not conclusive evidence of probable cause.

The New Mexico Court of Appeals suggested some persuasive reasons to reject the formulation of the   Restatement (Second) of Torts in Miera v. Waltemeyer, 97 N.M. 588, 642 P.2d 191 (Ct.App. 1982).  The New Mexico Court of Appeals observed:

> The Restatement Rule is apparently bottomed on the assumption that the magistrate has upon a full and fair trial proceeded to conviction predicated upon evidence that would convince a prudent and reasonable man of the guilt of the accused. Therefore there must have been probable cause for the criminal proceeding.  But the difficulty with the rationale is that the assumption may not be true.  If the magistrate erred as a matter of law, should the plaintiff be deprived of his cause of action? If that trial court had acted correctly there would have been an acquittal. Then the plaintiff would have been able to maintain the malicious prosecution suit. The inequity of a rule which in that situation bars the cause of action is obvious.

Miera v. Waltemeyer, 97 N.M. at 591, 642 P.2d at 194.  The Court sees wisdom in the New Mexico Court of Appeals' understanding that the Restatement (Second) of Torts rule might create inequity if a victim of a tort were barred from pursuing his cause of action because, for example, he could not question a legal error by a magistrate that led to the criminal charges against him improperly going before a jury in the first place.  This reasoning applies equally – and perhaps even more

forcefully – in the realm of constitutional law, where individuals suffering constitutional violations might be left without their § 1983 action because the federal courts decided to unquestioningly accept at face value the results of proceedings in front of state magistrate courts with judges who are lay people and who may have committed legal errors.

Treating the results of a lower-court proceeding as conclusive can be alternatively characterized as a form of nearly absolute deference to that lower court.  In this case, which involves a determination whether Anderson had probable cause, ab initio, to bring criminal charges against Mata, to assume the correctness of the magistrate court's determination that the criminal charges were sufficiently supported by evidence to go to a jury, and to assume that the jury verdict was supported by evidence, reflects a high level of deference to the magistrate court.  At the same time, the Court recognizes that a state court's determination of probable cause – even if the determination is, as in this case, non-formal and implicit – cannot be completely discounted, given that it is evidence that at least one legal decision-maker apart from the prosecutor believed that there was probable cause.  That a jury panel also returns a verdict of guilty constitutes additional evidence of the existence of probable cause.  And, if the state court in which such a proceeding occurred were a district court, with a legally trained judge and full indicia of procedural regularity and neutrality, such a proceeding might deserve greater deference.  The Court need not decide whether a jury conviction obtained in such a proceeding, even if overturned at the appellate level, is conclusive proof of the existence of probable cause.  Rather, the Court sees good reason to draw a distinction between New Mexico's district courts and its magistrate courts in certain areas, such as San Juan County, where lay people are allowed to serve as magistrates.  In other words, without denigrating the system which New Mexico chooses to employ in allowing lay people to sit as magistrates, the Court believes that there is justification for treating the guilty verdict against Mata, which was

obtained in such a magistrate court, differently than one obtained in a district court of general jurisdiction presided over by a legally trained judge.

The Supreme Court has recognized that a distinction exists between courts of record and so-called inferior courts.  For example, in Ex Parte Wilkins, 28 U.S. 193 (1830), the Supreme Court, in reviewing a petition for a writ of habeas corpus, noted that the conviction being challenged came from a "court of record" – a fact that placed the conviction on "high ground."  28 U.S. at 209.  Chief Justice John Marshall, writing for the court, explained: "[A] court martial was considered as one of those inferior courts of limited jurisdiction, where judgments may be questioned collaterally.  They are not placed on the same high ground with the judgments of a court of record."  Id.  See Boudemine v. Bush, 128 S.Ct. 2229, 2268 (2008) ("In contrast to 'inferior' tribunals of limited jurisdiction . . . courts of record had broad remedial powers, which gave the habeas court greater confidence in the judgment's validity.")(citations and internal quotation marks omitted).

As Chief Justice Marshall understood the distinction between courts of record and inferior courts, "a 'superior' court was a court of general jurisdiction, proceeding according to the common law, empowered to decide upon its own jurisdiction and to enter judgments that are entitled to a presumption of validity in subsequent litigation." Gerald L. Neuman, Habeas Corpus, Executive Detention, and the Removal of Aliens, 98 COLUM. L. REV. 961, 982 (1998).

> In contrast, inferior courts (or, more generally, tribunals) proceeded "by force of particular statutes, out of the course of the common law." The judgments or orders of these tribunals of special and limited jurisdiction did not carry the same presumption of validity as the judgments of a superior court. An inferior court's determination of its own jurisdiction could be reexamined on habeas, and its proceedings must expressly demonstrate that it had acted within its jurisdiction. Examples of "inferior" tribunals have included justices of the peace in certain states, police courts, courts-martial, and executive tribunals.

Id. at 982-83 (footnotes omitted).  While the discussion in Ex Parte Wilkins arose out of the

Supreme Court's habeas corpus jurisprudence, a sound principle emerges that federal courts, since their earliest days, have justifiably seen fit at times to afford less weight to the dispositions of inferior courts, which are not of record and which do not exercise general jurisdiction in the state.

The fact that New Mexico provides a de novo trial in the event of a conviction in the magistrate court further supports the wisdom in finding that a conviction in a magistrate court is less than conclusive of the existence of probable cause. See N.M. Const. Art. 6, § 27 ("Appeals shall be allowed in all cases from the final judgments and decisions of the probate courts and other inferior courts to the district courts, and in all such appeals, trial shall be had de novo unless otherwise provided by law."). New Mexico courts interpret the de novo trial as "[a] new trial or retrial had in an appellate court in which the whole case is gone into as if no trial whatever had been had in the court below." Miera v. Waltemeyer, 97 N.M. at 592, 642 P.2d at 195 (citations and internal quotation marks omitted). The New Mexico Court of Appeals, in rejecting Restatement (Second) of Torts § 667, mentioned the case before it as illustrating the errors that can occur in the magistrate court: "The wisdom of the minority rule is apparent from the transcript of the municipal court hearing, which shows that the municipal judge did not understand that self-defense is a defense to battery. . . .  He would not consider any action of the police officer towards plaintiff, but only allowed evidence of whether or not there was a battery by plaintiff on the officer." 97 N.M. at 591, 642 P.2d at 194.

Given the procedural safeguards that New Mexico puts up to guard against miscarriages of justice in its magistrate courts, it would seem proper for a federal court examining a conviction or a determination of probable cause made in such a magistrate court to be able to second-guess the magistrate court. Thus, the Court believes that a federal district court hearing a First Amendment retaliatory-prosecution claim should be able to give less weight to a state magistrate-court conviction

that is overturned at a de novo trial in the state's district court.  Specifically, when a state district court de novo trial results in a reversal of a conviction obtained in the magistrate court, the magistrate conviction is not sufficient evidence to warrant dismissal of a retaliatory prosecution claim for failure to establish want of probable cause.  A federal court hearing a motion to dismiss on such grounds should instead review the complaint, and should deny the motion to dismiss if, on the face of the complaint, the plaintiff alleges facts that would otherwise survive a 12(b)(6) motion.  The magistrate-court conviction may constitute evidence of probable cause, and it will ultimately be a plaintiff's burden to prove lack of probable cause, perhaps in the face of such potential evidence.  At the stage of a motion for dismissal on the pleadings, however, it is too early to say that Mata cannot rebut the evidence of the lower-court conviction if that evidence is admissible.[5]

### D.    THE STATE DISTRICT COURT'S SENDING OF TWO OUT OF THREE COUNTS AGAINST MATA TO THE JURY DOES NOT CONSTITUTE CONCLUSIVE EVIDENCE OF PROBABLE CAUSE.

At the hearing, Anderson argued that the fact that the state district court allowed two of the charges to go to a jury is sufficient proof of probable cause to warrant dismissal.  See Tr. at 16:17-23 (Court, Walker).  The Court agrees that it is at least evidence of probable cause that the district court allowed a jury to hear the case.  Mata countered at the hearing that the district court never made a formal finding of probable cause.  See id. at 23:8-9.  Anderson's point is well taken, however, that a court sending a charge to the jury reflects that court's implicit belief that there is probable cause.

_____

[5] While the Court refuses to follow Restatement (Second) of Torts § 667 on the lack-of-probable-cause element of First Amendment retaliatory-prosecution claims, the Court believes that dismissal might not be proper in this case even under § 667.  Section 667 has an exception for convictions "obtained by fraud, perjury or other corrupt means."  Id.  To the extent that the First Amended Complaint can be read to be alleging one of those exceptions, dismissal at this state would be improper.  At the hearing, Mata argued that the First Amended Complaint can be read as alleging that Anderson brought charges against him by corrupt means.  This conduct would likely fall under the exception to § 667.

Nevertheless, while the Court sees merit to Anderson's argument that the district court's act of sending two charges to the jury represents a finding of probable cause, the Court views the district court's actions as mere evidence of probable cause and not as conclusive. Mata may still be able to carry his burden of showing a lack of probable cause. Dismissal on the pleadings at this point for failure to establish lack of probable cause is therefore improper.

To maintain a cause of action for malicious prosecution, a plaintiff must show not only that there was a lack of probable cause, but that the underlying criminal proceeding terminated in his favor. See Heck v. Humphrey, 512 U.S. at 484 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."). While Mata brings a First-Amendment retaliation claim, which does not have, as an element, favorable determination, the existence of that element in malicious-prosecution claims has relevance to the probable-cause requirement, which exists in both the First-Amendment retaliation and malicious-prosecution claims. The Second Circuit has noted that "[t]he requirement that a plaintiff show such a favorable termination is designed principally to ensure against inconsistent judgments, see Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir.1989), and to avoid parallel litigation as to questions of probable cause." Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997).

The Restatement (Second) of Torts lists the dispositions which are generally considered to qualify as favorable terminations. See Restatement (Second) of Torts § 659. Among the list is "acquittal." While the Court need not adopt the entire list in § 659, and while the common law is not the definitive guide in deciding the contours of constitutional torts, the Court is not aware of authority finding that an acquittal by a jury would not satisfy the favorable-determination element of a malicious prosecution claim – at least when a final disposition on the merits has been entered in favor of the accused. See Restatement (Second) of Torts § 659 cmt. e.

An acquittal by a jury comes only if a court has either denied a directed verdict or has otherwise permitted the case to proceed to the jury.  In sending the case to the jury, the Court, either explicitly or, as is argued in this case, implicitly determined there to be sufficient evidence of guilt that the jury could reasonably find guilt beyond a reasonable doubt.  That belief includes an implicit belief that there was probable cause.  If a court sending a case to the jury were conclusive evidence of probable cause, malicious-prosecution law would be at odds with itself, because, on the one hand, it would require a showing of lack of probable cause, and on the other hand, it would allow acquittal to satisfy another essential element – namely, favorable determination – even though acquittal also implicitly proved the existence of probable cause, given that a necessary condition of acquittal by jury is that the judge see probable cause sufficient to send the case to the jury in the first place.  The Court believes that this tension is not a large concern in malicious-prosecution cases because it is understood that sending the case to the jury does not constitute conclusive evidence of probable cause.  Rather, a litigant in a malicious prosecution claim may prove lack of probable cause even though the judge in the criminal proceeding sent the case to the jury.

Even though First-Amendment retaliatory prosecution and malicious prosecution do not have the same elements, they both require lack of probable cause.  Proofs of lack of probable cause should usually be similar in either cause of action.  At least there is no good reason to hold that probable cause is not conclusively proved when a judge has sent criminal counts to the jury in a malicious-prosecution claim, but that the court sending the criminal counts to the jury is conclusive proof of probable cause in retaliatory-prosecution claims.  The Court therefore finds that a court – even a state district court – sending a case to the jury is not conclusive of the existence of probable cause.

## V.   ANDERSON DOES NOT ENJOY ABSOLUTE IMMUNITY IN THIS CASE.

Anderson argues that, even if Mata has otherwise stated a claim, the Court should dismiss the suit because Anderson enjoys absolute immunity.  The Court finds that, under the circumstances of this case, Anderson does not have absolute immunity.  His actions fall into the range of activities that are outside the sphere of absolute immunity.

"In evaluating an assertion of absolute immunity, the Supreme Court of the United States applies a functional approach, 'focus[ing] on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful.'"  Caputo v. Rio Rancho Police Dept., Slip Copy, 2006 WL 4063019 *2 (D.N.M. 2006) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 271 (1993)).  "Immunity extends to those activities 'intimately associated with the judicial phase of the criminal process,' which undoubtedly includes initiating criminal proceedings."  Becker v. Kroll, 494 F.3d 904, 925 (10th Cir. 2007)(quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).  The court looks to the "nature of the function performed, not the identity of the actor who performed it."  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).

While the identity of the one who performed the function is not the heart of the inquiry in absolute immunity, as a practical matter, police officers are rarely extended absolute immunity. Rather, police officers typically have qualified immunity.  And, "where . . . the constitutional tort is the action of a police officer in initiating a baseless prosecution, his role as a 'complaining witness' renders him liable to the victim under section 1983."  White v. Frank, 855 F.2d at 961.  In this case, Anderson, as a police officer, initiated prosecution by swearing out and executing a criminal complaint and an accompanying statement probable cause.  Anderson contends that such an action by the police officer is intimately associated with the judicial phase of the criminal process because, aside from swearing out the complaint and statement of probable cause, Anderson had to

obtain the approval of the magistrate judge. There is, however, nothing novel about Anderson swearing out a criminal complaint and getting the magistrate's signature such that it should give rise to immunity for Anderson. The Court instead believes that Anderson acted in a capacity analogous to a complaining witness. The Supreme Court has held that complaining witnesses do not enjoy immunity from suit for their role in initiating prosecution. See Malley v. Briggs, 475 U.S. at 340-41.

In Malley v. Briggs, the Supreme Court discussed whether a police officer seeking an arrest warrant, and who presented a judge with a complaint and supporting affidavit, was entitled to absolute immunity. Noting that an officer seeking an arrest warrant is functionally similar to a complaining witness, the Supreme Court held that such an officer does not enjoy absolute immunity. See id. In this case, like the officer in Malley v. Briggs, Anderson also was functionally equivalent to a complaining witness, because he swore out the factual allegations in the criminal complaint and in the statement of probable cause. His oath regarding the veracity of the criminal complaint and statement of probable cause formed the basis for initiation of prosecution. The magistrate approved the criminal complaint, but such approval by the magistrate does not convert Anderson into someone who would enjoy absolute immunity. The process is similar to swearing out a warrant, which also requires the ultimate approval of a magistrate. See Kalina v. Fletcher, 522 U.S. at 121.

Anderson's contention that he is absolutely immune because his activities were analogous to those of a prosecutor must also fail because, even if he were a prosecutor, he performed a function to which absolute immunity is not afforded. In Kalina v. Fletcher, a prosecutor commenced a criminal proceeding by filing three documents, including two unsworn pleadings constituting the charging information and a motion for a warrant. 522 U.S. at 121. In Kalina v. Fletcher, the prosecutor, following her state's rules of criminal procedure satisfied the requirement that an arrest warrant be "supported by an affidavit or 'sworn testimony establishing the grounds for issuing the

warrant'" by attaching to her motion for an arrest warrant a certification for the determination of probable cause.  522 U.S. at 121.  The certification for the determination of probable cause, which she swore out, summarized the evidence supporting a criminal charge.  See id.  While the Supreme Court in Kalina v. Fletcher considered the prosecutor's acts of filing the information and the motion for a warrant to be part of the advocates function which would afford immunity, the act of swearing to the factual allegations in the certification of determination of probable cause amounted to activity of a complaining witness for which there is no immunity.  See id. at 129, 130-31.

Anderson's conduct is analogous to that of the prosecutor in Kalina v. Fletcher.  Namely, he submitted a criminal complaint to which he attached a sworn statement laying out the essentials facts of the criminal charges and the reasons for probable cause.  Given that the Supreme Court has held such activity, in which the individual commencing prosecution submits an affidavit swearing to the factual allegations in the criminal complaint, to be beyond the blanket of absolute immunity, even when taken by a prosecutor, Anderson cannot expect to receive immunity in this case.  In light of the case law, the Court therefore concludes that Anderson did not enjoy absolute immunity under these circumstances.

**VI.**     **ANDERSON IS NOT ENTITLED TO QUALIFIED IMMUNITY.**

The Court is sensitive to the concerns raised in Pearson v. Callahan about slavish adherence to the two-step sequence of Saucier v. Katz in deciding the issue of qualified immunity.  Nevertheless, the Court will exercise its discretion and apply the traditional approach.  This case does not appear to one in which it would be appropriate to bypass examining the merits whether a constitutional violation occurred.  The Court believes that it has adequate information before it to decide whether the First Amended Complaint alleges facts that, if true, would amount to a constitutional violation.  The Court is also confident that it can give careful consideration to the

merits of the constitutional claim without short-cutting the analytic process.  It therefore makes sense in this case to first decide whether Mata has alleged a violation of a constitutional right.  The Court will then proceed to determine whether such a right was clearly established at the time of the alleged violation.

Anderson argues that, even if Mata's Amended Complaint states a claim for a First Amendment violation, he would be entitled to qualified immunity from suit.  Mata does not dispute that qualified immunity is proper if he failed to allege facts sufficient to demonstrate a constitutional violation.  See Response at 12.  Because Anderson has raised the defense of qualified immunity, Mata bears the burden of establishing that he suffered a constitutional violation.  See Gross v. Pirtle, 245 F.3d at 1155; Currier v. Doran, 242 F.3d at 917; Scull v. New Mexico, 236 F.3d at 595.  Mata must also show that the right violated was clearly established at the time the officer committed the alleged violation.    See Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186.  In making a ruling on qualified immunity, the Court must view the facts in the light most favorable to the party asserting the injury – in this case, Mata.  Applying those standards, the Court finds that Anderson is not entitled to qualified immunity because Mata has made allegations which, if taken as true, amount to a constitutional violation.  Moreover, the violation that Mata alleges occurred – First-Amendment retaliatory prosecution – constitutes a violation of clearly established law.

Mata sufficiently alleges that Anderson violated a constitutional right.  As discussed above, Mata properly pled all of the elements of a First Amendment retaliatory-prosecution claim.  Within certain limits not applicable in this case, citizens have a clearly established right to engage in protests and other free-speech activities without fear of government reprisals.  It is "settled that as a general matter, the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547

U.S. at 256 (citation omitted).

Because the Court has determined that Mata has sufficiently alleged and can prove a violation of a constitutional right, Mata must also establish that the right allegedly violated was clearly established at the time so that a reasonable person in Anderson's position would have known that his conduct violated that right.  See Tonkovich v. Kansas Bd. of Regents, 159 F.3d at 516.  To show that a reasonable person in Anderson's shoes would not have known that his conduct violated a constitutional right, Anderson primarily argues that he had – or had reason to believe that he had – probable cause.  In support of his argument, Anderson cites cases in which courts have examined allegations similar to those presented here, where an officer swears out a criminal complaint based on an affidavit of probable cause, and have found that the existence of probable cause at the time of filing the complaint establishes the officer's entitlement to qualified immunity even where, as here, the plaintiff alleges that the prosecution was undertaken in retaliation for the exercise of First-Amendment rights.  See, e.g., Barnes v. Wright, 449 F.3d 709, 716, 720 (6th Cir. 2006)(finding grand jury indictment was conclusive proof of probable cause); Gordy v. Burns, 294 F.3d 722, 728 (5th Cir. 2002)(holding that a court determines whether probable cause existed as of the time the government instituted criminal proceedings).

The Court is in agreement with Anderson that the existence of probable cause would eliminate Mata's claims because, in the first place, absence of probable cause is an essential element to a First-Amendment retaliatory-prosecution claim.  If probable cause were lacking, the Court would therefore not see the need to reach the qualified-immunity question.  The Court, however, has found that, on this motion to dismiss, taking the allegations in the First Amended Complaint as true, it is not possible to say that Anderson has conclusively shown that there was probable cause.  Mata alleges a lack of probable cause, and he will be permitted to attempt to prove that element of his

cause of action.  In the meantime, because the Court has not found that probable cause existed, Anderson's argument on that point becomes moot.

Moreover, the cases that Anderson cites for the proposition that a finding of probable cause eliminates qualified immunity do not control the decision on this motion.  In Barnes v. Wright, the United States Court of Appeals for the Sixth Circuit found that a plaintiff alleging both malicious prosecution and First-Amendment retaliatory prosecution could not state a claim because a properly constituted grand jury delivered an indictment against him, and he was convicted on one of the charges which he claimed was wrongfully brought.  449 F.3d at 716.  The Sixth Circuit found the grand jury indictment to be conclusive evidence of probable cause.  There is no such grand-jury indictment in this case, necessitating a consideration by the Court of its weight in the probable cause determination.

Gordy v. Burns involved an appeal from a trial for malicious prosecution.  On appeal, the United States Court of Appeals for the Fifth Circuit found that there was sufficient evidence of probable cause and that the officers in the case were therefore entitled to judgment as a matter of law.  See 294 F.3d at 729.  The Fifth Circuit in Gordy v. Burns stated that it did not need to decide whether there was qualified immunity.  Given that Gordy v. Burns does not even address qualified immunity, it is inapposite.

The Court also sees merit in Mata's argument that the Tenth Circuit has held it to be "clearly established that the Fourth Amendment's warrant requirement is violated when 'a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit' if the false statement is necessary to a finding of probable cause."  Clanton v. Cooper, 129 F.3d 1147, 1154 (quoting Franks v. Delaware, 438 U.S. 154, 155-56 (1978)).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth

Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Strepka v. Miller, 2001 WL 1475058 at * 5 (citing Currier v. Doran, 242 F.3d at 923). See Medina v. City and County of Denver, 960 F.2d at 1498. Admittedly, Clanton v. Cooper dealt with an alleged Fourth-Amendment violation. While Mata has, as of yet, not alleged a Fourth-Amendment violation, at the heart of the holding in Clanton v. Cooper is the notion that an officer who swears out facts supporting probable cause which he knows are false, for the purpose of obtaining a warrant, that officer commits a constitutional violation. It makes little sense to say that such conduct is unconstitutional if the victim of the violation seeking redress under § 1983 frames up his or her claim under a Fourth-Amendment theory, but that the conduct was constitutional if the victim's claim for redress is premised upon First-Amendment retaliation. The key inquiry in determining whether a right was clearly established at the time of the alleged violation is "whether the 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186. The focus is therefore not on the legal theory that a plaintiff ultimately chooses to state his claim, but on the officer's conduct, and whether the officer reasonably should have known he was violating a constitutional right at the time he took the action leading to the alleged violation. The Court believes that the law is clear that, when an officer who, by affidavit, supports probable cause with information he knows to be false, or with reckless disregard for the truth of the allegations underlying his allegation of probable cause, a constitutional violation occurs.

In this case, Mata has alleged facts similar to those alleged in Clanton v. Cooper – albeit under a different theory of recovery. Namely, Mata asserts in his First Amended Complaint that Anderson "was well aware that Plaintiff had engaged in no criminal activity" and yet chose, with retaliatory motive, to bring charges against Mata. First Amended Complaint ¶¶ 16, 19 & 21, at 4-5.

The implication of the allegations in the First Amended Complaint is that Anderson knew that Mata engaged in no criminal activity and thus knew that there was no probable cause to bring criminal charges against him.  If Anderson knew there was no probable cause, his sworn statement of probable cause, which was attached to the criminal complaint, represents a violation of a clearly established constitutional right.

Anderson argues that he did not file any criminal charges, and that a Magistrate Court judge had to approve the criminal complaint before it could be filed.  The implication of the need for magistrate approval, Anderson argues, is that independent judicial approval "breaks the chain" of causation and demonstrates that Anderson could not reasonably have known that he was violating any constitutional right by initiating criminal charges and swearing to facts in a Statement of Probable Cause.  Such an argument, however, ignores the nature of the allegations in this case.  The inquiry for determining qualified immunity in this case is properly characterized as whether Anderson had probable cause from the moment he initiated criminal charges against Mata.  On the face of the First Amended Complaint, Mata has alleged that Anderson knew that Mata engaged in no criminal activity, and that he went after Mata to teach him a lesson.  If those allegations are true, Anderson should have known that bringing criminal charges against someone whom he knew engaged in no criminal activity amounted to a violation, regardless of his ability to obtain a magistrate's signature.  The magistrate's signature does not necessarily wash clean a criminal complaint that is supported  by false factual allegations.  The allegations in the First Amended Complaint give rise to inferences that Anderson acted improperly and violated Mata's First-Amendment rights.  Moreover, the magistrate's signature does not constitute conclusive proof of probable cause.  As the Court discussed earlier, courts presiding over criminal proceedings might send cases to the jury, and a jury might acquit.  Nonetheless, a plaintiff might be able to prove a lack

of probable cause.  Similarly, the magistrate judge's signature is evidence and not conclusive proof.

Anderson may be able to use such evidence to prove on summary judgment or at trial that probable

cause in fact existed.  Therefore, the "chain-of-causation" argument is misplaced to the extent that

it is raised on the motion to dismiss.

 In conclusion, Anderson is not entitled to qualified immunity.  Mata has met his burden of

showing that his First Amended Complaint contains sufficient facts that, if true, give rise to the

inference that Anderson engaged in activity that violated Mata's clearly established rights.

## VII.    MATA MAY AMEND HIS COMPLAINT TO MORE FULLY SET FORTH HIS ALLEGATIONS AND ADD A FOURTH-AMENDMENT CLAIM FOR MALICIOUS PROSECUTION.

Mata has requested leave to amend his First Amended Complaint to set forth his allegations

in a more complete manner.  He also wishes to include a claim for Fourth-Amendment malicious

prosecution.  Rule 15(a) instructs courts to "freely give leave when justice requires."  Fed. R. Civ.

P. 15(a)(2). See Foman v. Davis, 371 U.S. 178 (1962).  The Tenth Circuit has also stated that "[a]

court should freely grant leave to amend when justice so requires."  Gillette v. Tansy, 17 F.3d 308,

313 (1994).  The Court sees no reason not to permit Mata to amend his First Amended Complaint.

The Court will therefore allow the amendment.  Mata must file his amended complaint within ten

days of the entry of this Memorandum Opinion and Order.

The Court realizes that Anderson might wish to pursue a defense based on the statute of

limitations.  The Court need not decide that issue at this time, but notes that rule 15(c) of the Federal

Rules of Civil Procedure allows for amendments to relate back to the date of the original pleading

when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or

occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P.

15(c)(1)(B).

**IT IS ORDERED** that the Defendant's Motion and Brief to Dismiss Plaintiff's Complaint for Failure to Timely Serve or, In the Alternative, Motion for Judgment on the Pleadings is denied. Mata may file an amended complaint within ten days of the entry of this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

_Counsel_:

Dennis W. Montoya
Montoya Law, Inc.
Rio Rancho, New Mexico

     _Attorneys for the Plaintiff_

Alex C. Walker
Lisa Mann
Modrall, Sperling, Roehl, Harris
  & Sisk, P.A.
Albuquerque, New Mexico

     _Attorneys for the Defendant_

-67-