**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JUAN MATA,

      Plaintiff,

vs.                                                    No. 08-0046 JB/RLP

SGT. RON ANDERSON,

      Defendant.

**DEFENDANT RON ANDERSON'S**
**MOTION FOR SUMMARY JUDGMENT**

    Sergeant Ron Anderson of the City of Farmington Police Department ("Sgt. Anderson") submits this motion for summary judgment on Plaintiff's Second Amended Complaint for First Amendment retaliation, Fourth Amendment malicious prosecution, and malicious abuse of process in violation of New Mexico common law.  As explained more fully below, all of Plaintiff's claims fail as a matter of law and on the undisputed facts.

**INTRODUCTION AND BACKGROUND**

    On November 29, 2002 Farmington Police Officer Mike Briseno passed a trailer on Sycamore Street in Farmington, New Mexico.  As he passed, he saw three men standing beside a vehicle which was blaring loud music.  One of those men, later revealed to be Plaintiff Juan Mata's brother, Rene, "flipped off" Officer Briseno, who stopped his car and told the men to turn down the music.  Rather than comply with the order, Rene cursed at Officer Briseno.  Officer Briseno then asked for Rene's identification, intending to issue him a citation for disorderly conduct.  Rene refused to give his identification and instead ran into the trailer.  Officer Briseno followed Rene to the trailer porch and continued to request identification.  At that point, Gregoria Mora (Rene and Juan Mata's mother) intervened, placing herself between Officer

Briseno and Rene.  When another officer attempted to escort Ms. Mora off the porch, Rene charged out of the trailer toward the officer.  As Rene resisted the officers' attempts to arrest him, Juan Mata intervened, coming out of his trailer and charging toward the officers, flailing his arms and screaming at the officers, "What the fuck is going on?!  What the fuck are you doing here?!"  Officer Briseno gave Juan Mata a verbal command to stop his approach.  When he did not, Officer Briseno sprayed him with department issued pepper spray.  Juan Mata was arrested and charged with unlawful rescue and assault on a police officer.

This incident from late 2002 set off a litany of harassing, threatening, and defamatory activity by Plaintiff Juan Mata with respect to Officer Briseno.  For instance, Plaintiff made threats of physical violence toward Officer Briseno, and reported having retained the services of a hit man to carry out these threats.  Plaintiff hired a private investigator to follow Officer Briseno, and purportedly learned the date, location, and times of Officer Briseno's son's baseball games.  Plaintiff was then involved in a petition claiming that Officer Briseno had illegally stopped and searched vehicles.  Investigation into those claims found them to be unsubstantiated, and at least one individual reported their belief that Juan Mata had forged their name on the petition.  Plaintiff's attorney, purportedly acting at Plaintiff's request, then circulated a letter that accused Officer Briseno of committing 11 felonies when, in fact, Officer Briseno was out of the state of vacation at the time he was alleged to have committed these felonious acts.  On another occasion, Plaintiff held up signs outside the police station accusing Officer Briseno of being "dirty" and a "liar."

As a result of Plaintiff's harassing, defamatory conduct toward Officer Briseno, and after consulting with the Farmington City Attorney's office, Sgt. Ron Anderson filed misdemeanor criminal charges against Plaintiff for harassment, stalking, and criminal libel.  A jury convicted

Plaintiff on all three counts at the Magistrate Court level.  Following a *de novo* appeal to the District Court, a jury found Plaintiff not-guilty.  Plaintiff has now filed suit against Sgt. Anderson, claiming that the criminal charges against him violated his First and Fourth Amendment rights, and also constituted a malicious abuse of process under New Mexico common law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

For purposes of this motion, Sgt. Anderson states that the following material facts are undisputed.

1.      Plaintiff Juan Mata claimed that his civil rights violated during a November 29, 2002 arrest in which Plaintiff was pepper sprayed by Officer Mike Briseno.   The 11/29/02 incident ultimately resulted in a civil rights lawsuit against the City of Farmington and several police officers, including Officer Briseno.   See Complaint, filed 11/28/04 [Doc. No. 1] (04cv1334 ACT/RLP).

2.      On May 12, 2003, the Farmington Police Department received a petition delived by Gregoria Mora, Juan Mata's mother, signed by Juan Mata and others, claiming that Officer Briseno had engaged in illegal stops and searches.   See Affidavit of Sgt. Anderson, ¶ 5 [Doc. 35, filed 10/19/09].   Internal affairs investigated the improper conduct alleged in the May 12, 2003 petition by sending letters to the 147 people whose names and addresses could be deciphered from the petition.   Of the 20 individuals who responded, 16 stated that they had never had any negative contacts with Officer Briseno.   Seven of the 20 people reported that they did not sign the petition and felt that their names had been forged.   None of the 20 individuals who responded to the investigation provided any verifiable information about any improper conduct by Officer

Briseno while working for the Farmington Police Department.  Id., ¶ 11.  The investigation, completed in early July 2003, determined that the complaint was deemed *Unsustained.*  Id., ¶ 11.

3.     On May 20, 2003, Sgt. Anderson received an interoffice memorandum from Officer Briseno regarding a potential death threat against him by Juan Mata.  See Affidavit of Sgt. Anderson, ¶ 7 [Doc. 35].   On May 23, 2003, Sgt. Anderson received another interoffice memorandum from Officer Briseno regarding possible threats by Juan Mata.  Id., ¶ 8.

4.     In early September 2004, the Farmington Police Department received a letter accusing Officer Briseno of having committed 11 felonies.  The letter was signed by Ron Adamson, who stated in the letter that he was acting on behalf of Juan Mata.  See Affidavit of Sgt. Anderson, ¶¶ 13-14 [Doc. 35].  After learning of the letter, Sgt. Anderson checked Officer Briseno's duty schedule and learned that not only was he not on duty, but he wasn't even in the state during the time he was alleged to have committed these felonies.  Id., ¶ 15.

5.     Sometime in mid-September, Sgt. Anderson spoke with Bill Cooke, an attorney for the City of Farmington, seeking advice on how to handle the situation (*i.e.*, the alleged death threats, the petition, and the letter) involving Officer Briseno and Juan Mata.  See Affidavit of Sgt. Anderson, ¶ 17 [Doc. 35].

6.     On October 28, 2004, Juan Mata appeared outside the City of Farmington police department, displaying signs accusing Officer Briseno of being "dirty" and a "liar."   See Affidavit of Sgt. Anderson, ¶ 19 [Doc. 35]; also Juan Mata Depo., p. 116:17 – 117:16 (Exhibit A).

7.     At the end of November, 2004, Sgt. Anderson met again with Bill Cooke to discuss the situation involving Officer Briseno and Juan Mata.  Mr. Cooke told Sgt. Anderson

that he believed Mr. Mata's actions violated one or more criminal statutes and that he was in the process of preparing a criminal complaint.  <u>See</u> Affidavit of Sgt. Anderson, ¶ 21 [Doc. 35].

8.    Sgt. Anderson met with Bill Cooke on January 11, 2005 and Sgt. Anderson signed a Criminal Complaint and a Statement of Probable Cause that Mr. Cooke had prepared for his signature.  <u>See</u> Affidavit of Sgt. Anderson, ¶ 22 [Doc. 35].

9.    Plaintiff learned of the criminal charges when he received a letter in the mail advising him to appear in Court.   <u>See</u> Juan Mata Depo., p. 92-93.  At no time before or after he received the criminal complaint was Plaintiff arrested, handcuffed or taken into custody.  <u>See</u> Juan Mata Depo., p. 92:14 to 96: 14.  He was not required to report to a police station or stay in his house, and was free to leave the Court and go about his business.  <u>Id</u>.

10.    Through his counsel, Plaintiff had opportunity to present evidence and argument to the Magistrate Court.   Plaintiff was thereafter convicted on all three charges.  <u>See</u> Juan Mata Depo., p. 92:14 to 96: 14.  Plaintiff appealed his conviction to the District Court.  Though the criminal libel charge was dismissed on constitutional grounds, Plaintiff was acquitted of the harassment and stalking charges only after a full trial and jury verdict. <u>See</u> Juan Mata Depo., p. 100:1-12.

11.    Juan Mata did not file a Tort Claims Act notice in connection with his malicious abuse of process claim.  <u>See</u> Affidavit of Ezora Boognl, ¶ 4 [Doc. 34, filed 10/19/09].

12.    Juan Mata's first case against the City of Farmington settled on November 16, 2005.  <u>See</u> Judge Puglisi Notice to Docket Clerk [Doc. 8-2].  As part of the settlement, Mata agreed to release "any and all claims that Plaintiffs [including Juan Mata] now have or could hereafter assert against any of the Released Parties of any nature whatsoever." <u>See</u> Affidavit of

Ezora Boognl, ¶ 3 [Doc. 34]; see also Juan Mata Deposition, p. 73:24 to p. 74:6; and p. 74:22 to p. 76:4.

## ARGUMENT

Plaintiff alleges that he exercised his First Amendment rights by filing a suit against the Farmington Police Department in 2004 and in making public critiques of Officer Briseno and the Farmington Police Deparmtnet.   See Second Amended Complaint, ¶ 6-10, 38-40.   Plaintiff claims that Sgt. Anderson retaliated against him for his speech when Sgt. Anderson cited him for criminal libel, harassment, and stalking (Counts I-III).   Plaintiff also claims that that Sgt. Anderson lacked probable cause to file any criminal charges against him, meaning that the underlying criminal prosecution of Plaintiff for criminal libel, harassment, and stalking was malicious and in violation of the Fourth Amendment (Counts IV-VI) and also in violation of New Mexico state law prohibiting malicious abuse of process (Count VII).   Plaintiff argues in the alternative that, even if there was probable cause to support the charges, the Sgt. Anderson still abused the use of criminal process in violation of New Mexico law (Count VIII-X).

As set forth below, even taking the evidence in the light most favorable to Plaintiff, there are no genuine issues of material fact and Sgt. Anderson is entitled to summary judgment on each of Plaintiff's claims.

**I.    SGT. ANDERSON IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS I – VII OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

**A.    LACK OF PROBABLE CAUSE IS AN ESSENTIAL ELEMENT OF COUNTS I – VII OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

**1.   Plaintiff's 1st Amendment Claims (Counts I – III) Require Plaintiff to Establish the Absence of Probable Cause**

First Amendment retaliation claims are generally, but not always, brought in the public employment context.  See McCook v. Springer School District, 44 Fed. Appx. 896 (10th Cir.

2002) (citing <u>Connick v. Myers</u>, 461 U.S. 138 (1983); <u>Pickering v. Board of Educ.</u>, 391 U.S. 563 (1968)).  In such cases, the Supreme Court has explained: "[O]ur discussions of the elements of the constitutional tort do not specify any necessary details about proof of a connection between the retaliatory animus and the discharge, which will depend on the circumstances." <u>Hartman v. Moore</u>, 547 U.S. 250, 260 (2006).  Rather, "[t]he cases have simply taken the evidence of the motive and the discharge as sufficient for a circumstantial demonstration that the one caused the other." <u>Id.</u>

In this case, Mr. Mata is not a public employee, and Sgt. Anderson is not a public employer.  In cases like this, when a plaintiff asserts that the retaliation for protected conduct is a criminal charge, the "constitutional tort action will differ from this standard case in two ways." <u>Id.</u> First, in retaliatory prosecution cases, there is always a "distinct body of highly valuable circumstantial evidence available and apt to prove or disprove retaliatory causation, namely evidence showing whether there was or was not probable cause to bring the criminal charge." <u>Id.</u> at 261. Second, the existence of absolute prosecutorial immunity gives rise to an added layer of complexity in retaliatory prosecution suits.  Specifically, § 1983 actions for retaliatory prosecution

> will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute . . . . [I]nstead, the defendant will be a non-prosecutor . . . who may have influenced the prosecutorial decision but did not himself make it, and the cause of action will not be strictly for retaliatory prosecution, but for successful retaliatory inducement to prosecute.

<u>Hartman v. Moore</u>, 547 U.S. at 262.

As a consequence, plaintiffs in retaliatory-prosecution cases must demonstrate a causal connection between one person's retaliatory animus and that person's injurious conduct, and a causal connection between the retaliatory animus of one person and that of another.  <u>See id.</u>  The

allegation needed "both to bridge the gap between the nonprosecuting government agent's motive and the prosecution's action, and to address the presumption of prosecutorial regularity," is "the absence of probable cause." <u>Id.</u>   In retaliatory-prosecution cases, the Supreme Court requires that lack of probable cause be pleaded and proven.   <u>See id.</u> at 266.

In light of <u>Hartman v. Moore</u>, the Tenth Circuit has held that,

> [t]o establish a § 1983 retaliation claim against non-immune officials, [a plaintiff] must plead and prove (1) that she was engaged in a constitutionally protected activity; (2) that a defendant's action caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to her exercise of herFirst Amendment speech rights. Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000). She also must plead and prove the absence of probable cause for the prosecution. Hartman [v. Moore], 126 S.Ct. at 1707.

<u>Becker v. Kroll</u>, 494 F.3d 904, 925 (10th Cir. 2007).

## 2. **Plaintiff's Fourth Amendment Claims (Counts IV – VI) Require Plaintiff to Establish the Absence of Probable Cause**

The Tenth Circuit "has recognized the viability of malicious prosecution claims under §1983." <u>Taylor v. Meacham</u>, 82 F.3d 1556, 1560 (10th Cir. 1996) (one constitutional right protected by §1983 malicious prosecution claims "is the Fourth Amendment's right to be free from unreasonable seizures.").   Though the analysis of a Section 1983 malicious prosecution claim begins with the common law elements of malicious prosecution, <u>see</u> <u>Pierce v. Gilchrist</u>, 359 F.3d 1279, 1288 (10th Cir. 2004))(clarifying that the common law elements of malicious prosecution do not refer to the specific terms of the tort law of any particular state, but rather "to general principles of common law among the several states"), the ultimate question remains whether the plaintiff has proven a Fourth Amendment constitutional violation.   <u>Taylor v. Meacham</u>, 82 F.3d at 1561.   To establish a Section 1983 claim for malicious prosecution under

the Fourth Amendment, Plaintiff must demonstrate that the Defendant knowingly arrested defendant without probable cause, leading to the defendant's subsequent confinement and prosecution. Id. (citing Albright v. Oliver, 510 U.S. 266 (1994)); see also Gerstein v. Pugh, 420 U.S. 103, 114 (1975) ("[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.")

### 3.   Plaintiff's State Law Malicious Abuse of Process Claim (Count VII) Requires Plaintiff to Establish the Absence of Probable Cause

New Mexico has combined the torts of abuse of process and malicious prosecution into a single tort: malicious abuse of process. Devaney v. Thriftway Marketing Corp., 124 N.M. 512, 518, 953 P.2d 277, 283 (1997). "In restating the torts as a single cause of action, [the New Mexico Supreme Court] observed that they shared a common purpose of protective a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights." Westar Mortgage Corp. v. Jackson, 133 N.M. 114, 120, 61 P.3d 823, 829 (2002) (internal quotation marks and citations omitted). The following are the elements of malicious abuse of process:

> (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages.

Id., at 283. There are two methods by which a plaintiff may satisfy the second element of the tort: (1) demonstrating that the defendant filed the action against the plaintiff without probable cause, which must be manifest; or (2) showing some "irregularity or impropriety suggesting extortion, delay, or harassment" on the part of the defendant that indicates the wrongful use of

proceedings.  Id., at 285-87.  Count VII of Plaintiff's Second Amended Complaint alleges the absence of probable cause.

### B.        THE UNDISPUTED FACTS ESTABLISH PROBABLE CAUSE

#### 1.   The Law of Probable Cause

Probable cause exists when "the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." Karr v. Smith, 774 F.2d  1029, 1031 (10th Cir. 1985). In determining whether an officer had probable cause, "we look objectively at the reasonable conclusions that could have been drawn based on 'the facts known to the arresting officer at the time of the arrest.'" Titus v. Ahlm, 2008 U.S. App. LEXIS 23542 (D.N.M. October 28, 2008) (quoting Deenpeck v. Alford, 543 U.S. 146, 152 (2004)).  "Probable cause means more than a suspicion but less than a certainty; *only a probability of criminal conduct need be shown. The officers do not need to positively know that a crime was committed*." State v. Copeland, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct. App. 1986) (citations omitted; emphasis added); also United States v. Summage, 481 F.3d 1075, 1078 (8th Cir. 2007), cert. denied, 128 S. Ct. 875, 169 L. Ed. 2d 737 (2008) ("…only a probability of criminal conduct need be shown."); United States v. Moeller, 60 Fed. Appx. 36 (9th Cir. 2003) ("In order for there to be probable cause, only a showing of a probability of criminal conduct is necessary, not a prima facie showing.").

#### 2.   Elements of the Underlying Criminal Charges Against Plaintiff

Plaintiff was charged with three misdemeanor counts: criminal libel, stalking, and harassment.  Harassment "consists of knowingly pursuing a pattern of conduct that is intended to annoy, seriously alarm or terrorize another person and that serves no lawful purpose.  The

conduct must be such that it would cause a reasonable person to suffer substantial emotional distress."  NMSA 1978, § 30-3A-2.  "Stalking consists of knowingly pursuing a pattern of conduct, without lawful authority, directed at a specific individual when the person intends that the pattern of conduct would place the individual in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint of the individual or another individual."  NMSA 1978, § 30-3A-3.  Libel "consists of making, writing, publishing, selling or circulating without good motives and justifiable ends, any false and malicious statement affecting the reputation, business or occupation of another, or which exposes another to hatred, contempt, ridicule, degradation or disgrace."  NMSA 1978, § 30-11-1.

### 3. The Information Known To Sgt. Anderson And Set Forth In The Criminal Complaint Demonstrate Probable Cause That The Offenses Had Been Committed

The question to be resolved is whether the facts known to Sgt. Anderson supported his conclusion of probable cause.  At the time the criminal charges were filed against Plaintiff, Sgt. Anderson knew the following:

- Plaintiff had accused Officer Briseno of illegally stopping and searching vehicles and persons, which claims were unsubstantiated;

- Plaintiff had bragged about hiring a Mexican national from Ciudad Juarez to "take out" Officer Briseno at a specific time to ensure that Plaintiff had an alibi for the "hit";

- Plaintiff had hired a private investigator to gather information about Officer Briseno's personal residence and even knew the times and locations of Officer Briseno's son's baseball games;

- An attorney purporting to be acting on Plaintiff's behalf circulated a letter falsely accusing Officer Briseno of committing 11 felonies, even though Officer Briseno was out of the state on vacation at the time he was alleged to have committed these felonious acts;

- Plaintiff had held up signs outside the police station accusing Officer Briseno of being dirty and a liar.

<u>See</u> Facts 2-4, 6 (referencing Sgt. Anderson's affidavit).

These facts were more than sufficient to cause a prudent man to believe that an offense had probably been committed.  That is, the picket signs, the letter, and the petition were certainly sufficient to establish a probability that Plaintiff had circulated false and malicious statements about Officer Briseno affecting his reputation (*i.e.*, criminal libel).  Similarly, the threats, the petition, the letter, and the signs were sufficient to establish a probability that Plaintiff had engaged in a pattern of activity intended to annoy Officer Briseno and to place him in reasonable fear of bodily harm (*i.e.*, harassment and stalking).

Finally, that probable cause existed is bolstered by the fact that the charges were not dismissed at the magistrate court level.  Rather, the charges all went to trial and a jury of Plaintiff's peers found him *guilty of the charges*.  <u>See</u> Fact 10.  Even on appeal to the district court, the charges were not dismissed outright by the judge for lack of probable cause.  Rather, the libel charge was dismissed on constitutional grounds unrelated to probable cause and the harassment and stalking charges were sent to a jury, indicating that the judge believed there to be probable cause to submit the case for decision by the jury.  <u>Id.</u>  Though this Court has previously rejected Sgt. Anderson's position that a conviction is *conclusive* evidence of probable cause even where the conviction is later overturned, the Court recognized that sending a charge to a jury reflects that court's implicit, if not explicit, belief that there is probable cause – *relevant* evidence in determining the existence of probable cause.  <u>See</u> Memorandum Opinion and Order at 55-56, Sec. IV.D., No. CIV 08-0046 JB/RLP (denying Defendant Anderson's Motion to Dismiss on the pleadings).  The undisputed evidence in this case renders Plaintiff unable to carry his burden of showing a lack of probable cause sufficient to support his claims.

**C.   EVEN IF PROBABLE CAUSE WERE LACKING, SGT. ANDERSON IS NEVERTHELESS ENTITLED TO QUALIFIED IMMUNITY**

Although the undisputed facts of this case establish that probable cause existed to charge Plaintiff with libel, harassment, and stalking, even a finding of no probable cause does not result in Sgt. Anderson's personal liability, because under a qualified immunity analysis, the question is not whether probable cause actually existed, but whether Sgt. Anderson could have believed that probable cause existed.  <u>Saucier v. Katz</u>, 533 U.S. 194, 206 (2001) (qualified immunity of course "operates to grant officers immunity for reasonable mistakes as to the legality of their actions.").  In this case, the facts most certainly could have led Sgt. Anderson to believe that probable cause existed to charge Plaintiff with libel, stalking, and harassment.  Accordingly, Sgt. Anderson is entitled to qualified immunity.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Ramirez v. Oklahoma Dept. of Mental Health</u>, 41 F.3d 584, 592-93 (10th Cir.1994) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)); <u>see</u> <u>also</u> <u>Workman v. Jordan</u>, 958 F.2d 332, 336 (10th Cir.1992) ("If [defendants'] actions are those that a reasonable person could have believed were lawful, defendants are entitled to dismissal before discovery.").  The rights at issue here are Plaintiff's rights not to be retaliated against, seized, or prosecuted without probable cause.  Whether probable cause ultimately existed or not, Sgt. Anderson is "entitled to qualified immunity 'if a reasonable police officer *could have believed* that probable caused existed to arrest [the plaintiff].'"  <u>McFarland v. Childers</u>, 212 F.3d 1178, 1186 (10th Cir. 2000) (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 228, 116 L. Ed. 2d 589, 112 S. Ct. 534 (1991)) (emphasis added).

Indeed, as the Supreme Court has recognized, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987); also Hunter v. Bryant, 502 U.S. at 227 (same); Saucier v. Katz, 533 U.S. 194, 206 (2001) ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution.").

In this case, Sgt. Anderson is entitled to qualified immunity because – as set forth above– the facts he gathered could have easily led a reasonable police officer in his position to believe that a crime had been committed.  Furthermore, the undisputed evidence establishes that the summons and complaint were issued only after Sgt. Anderson sought guidance and approval from the City of Farmington's legal department.  As noted in his affidavit, Sgt. Anderson specifically relied on the legal direction provided by Assistant City Attorney Bill Cook as to whether the facts supported the crimes with which Plaintiff was charged.  See Facts 5, 7-8.   A police officer, like Sgt. Anderson, who files criminal charges only after being fully advised by the city attorney that probable cause supports such charges, is entitled to qualified immunity – even if it is later determined that the charges were *not* supported by probable cause.  E.g., V-1 Oil Co. v. State of Wyo., Dept. of Environmental Quality, 902 F.2d 1482, 1489 (10th Cir. 1990) (an officer "who conducts a warrantless search on the same day he was advised by fully informed, high-ranking government attorneys that a particular statute, which had not yet been tested in any court, lawfully authorized that particular search -- should not be expected to have known that the search was unconstitutional."); Hollingsworth v. Hill, 110 F.3d 733 (10th Cir. Okla. 1997) (finding that deputy sheriff was entitled to qualified immunity because it was

objectively reasonable for him to believe his actions did not violate plaintiff's rights, given that he had sought the advice of the district attorney and relied on the district attorney's advice); <u>Cox v. Hainey</u>, 391 F.3d 25, 32 (1st Cir. 2004) (a state trooper's consultation with an assistant district attorney "buttress[es] the conclusion that [trooper's] actions were objectively reasonable"); <u>Frye v. Kansas City Missouri Police Dep't</u>, 375 F.3d 785, 792 (8th Cir. 2004) (officers' consultation with city attorney demonstrates reasonableness); <u>Wadkins v. Arnold</u>, 214 F.3d 535, 542 (4th Cir. 2000) (authorization from county prosecutor concerning application for warrants presents compelling evidence of reasonableness); <u>Forman v. Richmond Police Dep't</u>, 104 F.3d 950 (7th Cir. 1997) (a lieutenant's reliance on a county prosecutor's advice provides evidence of good faith and reasonableness)

The present case is similar to <u>Gehl Group v. Koby</u>, 63 F.3d 1528 (10th Cir. 1995).  In <u>Gehl Group</u>, two chapters of the Colorado Fraternal Order of Police ("FOP") hired the Gehl Group to assist in their fundraising efforts. Shortly thereafter, the Boulder Police Department began to receive complaints from citizens alleging that Gehl solicitors were misrepresenting that contributions would go directly to the Department and not to the FOP.  After verifying two of the citizen complaints in the summer, police detective John Ross ("Ross") drafted a criminal complaint against GEHL'S regional manager, Michael K. Brady ("Brady"), charging Brady with violation of Colorado's Fraud in Effecting Sales Act.[1]  Before drafting the Complaint, Ross obtained the approval of the Boulder Police Department's legal advisor.  Ross also sought approval from the District Attorney, who recommended that criminal charges *not* be sought,

---

[1] Like New Mexico, Colorado law permits a peace officer to issue a summons and complaint for "a misdemeanor or a petty offense committed in his presence or, if not committed in his presence, which he has probable cause to believe was committed and probable cause to believe was committed by the person charged."  <u>See</u> Colo. Rev. Stat. Sec. 16-2-104.

even though the charges were prosecutable.   Notwithstanding the District Attorney's recommendation, Ross served the summons and complaint on Brady.

Ultimately, the district attorney moved to dismiss the criminal case, in part because the complaint was brought under the wrong statute.  Although the charges were dropped, plaintiffs brought § 1983 action against the various law enforcement and other officials of the City and County of Boulder, alleging that Defendants had filed baseless criminal charges against them and had selectively and vindictively prosecuted them.   The individual defendants moved for summary judgment based in part on an assertion of qualified immunity.  Gehl Group v. Koby, 838 F. Supp. 1409, 1413 (D. Colo. 1993).  In granting qualified immunity to the officers on Plaintiff's claim that Defendants' conduct violated their rights to freedom of speech, protected by the First Amendment, the District Court stated that:

> The question … is not simply whether probable cause existed for the issue of the summons.  Rather, the point is whether a reasonable police official could have believed the summons to be lawful, in light of clearly established law and the information the official possessed.  If so, then Defendants are entitled to qualified immunity.  The Supreme Court has "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present and we have indicated that in such cases those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable."

Id. (quoting Anderson, 483 U.S. at 641.)  The District Court reviewed the relevant information held by the Boulder Police Department prior to filing criminal charges and noted that among the information in its possession was the opinion of its legal advisor, and that of the District Attorney that the criminal complaint was "prosecutable."  Gehl Group, 838 F. Supp. at 1415. The District Court therefore granted summary judgment in favor of the individual defendants on the grounds of qualified immunity.

On appeal, the 10th Circuit Court of appeals affirmed the District Court's grant of qualified immunity.  Applying the *de novo* standard of review, the 10th Circuit again cited one of the grounds for its decision the fact that the Boulder Police Department's legal advisor approved the charges and that the District Attorney concluded there was a prosecutable case. See Gehl Group, 63 F.3d at 1536.

Whether probable cause ultimately existed or not, Sgt. Anderson is entitled to qualified immunity because a reasonable police officer in his position, given the facts that he knew and the legal counsel received from the City Attorney, *could have believed* that probable caused existed to arrest the Plaintiff.  Accordingly, summary judgment is proper on Counts I – VII.

## II. PLAINTIFF'S OTHER STATE COURT MALICIOUS ABUSE OF PROCESS CLAIMS (COUNTS VIII-X) FAIL BECAUSE THERE WAS NO PROCEDURAL IRREGULARITY OR MISUSE OF PROCESS

Aside from a lack of probable cause, the other way in which a party can demonstrate misuse of process is by showing that there was "some irregularity or impropriety suggesting extortion, delay, or harassment, conduct formerly actionable under the tort of abuse of process." Fleetwood Retail Corp. Of New Mexico v. LeDoux, 142 N.M. 150, 155, 164 P.3d 31, 36 (N.M. 2007) (internal quotation marks and citation omitted). A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt.  Durham v. Guest, No. 30,656, 204 P.3d 19, 2009 WL 701734 at *8 (N.M. Feb 20, 2009).

Plaintiff does not allege that Sgt. Anderson used the criminal complaint as part of some larger extortion scheme.  Rather, Plaintiff argues that Sgt. Anderson used the Criminal Complaint for the purpose "of harassment against Plaintiff and/or for some other or additional

17

wrongful use of proceedings." <u>See</u> Second Amended Complaint, ¶¶ 97, 99, 101.  Plaintiff has no evidence to support these allegations.  Indeed, the only evidence in the record regarding Sgt. Anderson's motives completely refutes Plaintiff's allegations.  Sgt. Anderson was not motivated by a desire to harass Plaintiff, but by a desire to address Plaintiff's apparent criminal activities and ensure the safety of a City of Farmington police officer that had been repeatedly threatened, stalked, and defamed by Plaintiff.  <u>See</u> Sgt. Anderson Affidavit, ¶ 25 [Doc. 35].

In this case, Plaintiff has no competent evidence of procedural improprieties on the part of Sgt. Anderson that would give rise to a claim of malicious-abuse-of-process on that theory. Plaintiff's has offered no facts which would support a finding that Sergeant Anderson engaged in some "irregularity or impropriety suggesting extortion, delay, or harassment" which suggests a wrongful use of the proceedings.   The only wrongful act even attributed to Sgt. Anderson is the filing of the criminal complaint.  Sgt. Anderson's filing of a complaint, without any overt misuse of process, should not subject him to liability for malicious abuse of process.  <u>See</u> <u>Richardson v. Rutherford</u>, 109 N.M. 495, 502, 787 P.2d 414, 421 (1990) ("There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions . . . .") (quoting W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, & David G. Owen, Prosser and Keeton on the Law of Torts § 121, at 898 (5th ed. 1984)).  Since Plaintiff can offer nothing more than conclusory allegations of procedural impropriety, Sgt. Anderson is entitled to summary judgment on Counts VIII – X of Plaintiff's Second Amended Complaint.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment).

### III.   PLAINTIFF'S FOURTH AMENDMENT CLAIMS (COUNTS IV–VI) ALSO FAIL BECAUSE THERE WAS ADMITTEDLY NO "SEIZURE"

In Counts IV-VI of his Second Amended Complaint, Plaintiff claims that he was maliciously prosecuted in violation of the Fourth Amendment because Sgt. Anderson lacked probable cause to assert a criminal complaint against him for Criminal Libel (Count IV), Harassment (Count V) and Stalking (Count VI).  The Fourth Amendment claim takes state law concerning malicious prosecution as a starting point only, and requires a significant additional element – that the malicious prosecution caused a violation of Plaintiff's Fourth Amendment right not to be seized unreasonably.  In other words, even if Plaintiff could establish a lack of probable cause, he cannot bring a claim under the Fourth Amendment unless he was seized (i.e., through arrest or detention).

Since Plaintiff was not (and does not allege that he was) arrested or detained in any way pursuant to the criminal charges at issue, the only "deprivation of liberty" he suffered was the necessity of attending his trial and defending against the charges.  See Fact 9.  The Tenth Circuit has held, however, in affirming a dismissal of a malicious prosecution claim, that having to attend a trial is insufficient to constitute a seizure under the Fourth Amendment for purposes of a malicious prosecution claim:

> We agree with the district court that Lewis and Woodman have failed to put forth sufficient evidence showing they were seized for purposes of the Fourth Amendment.  Specifically, the only deprivations of liberty sustained by Lewis are that he had to attend two trials; he had to appeal his harassment convictions after one of the trials; and he was fingerprinted in connection with one of the summons.  Similarly, the only deprivation of liberty sustained by Woodman is that she had to make one, and possibly two, court appearances before the disturbing the peace charge was dismissed.  Because Lewis and Woodman have not shown they sustained any other deprivations of liberty in connection with their receipt of the summonses, they have failed to show they were seized in violation of the Fourth Amendment.

19

Lewis v. Rock, 48 Fed. Appx. 291, 294 (10th Cir. 2002) (citations omitted); also E.g., Britton v. Maloney, 196 F.3d 24, 29 (1st Cir. 1999) ("Absent any evidence that Britton was arrested, detained, restricted in his travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment."); Myers v. Shaver, 245 F. Supp. 2d 805, 812 (W.D. Va. 2003) ("A summons to answer charges on a criminal complaint is not, by itself, a seizure under the Fourth Amendment."); Depiero v. City of Macedonia, 180 F.3d 770, 789 (6th Cir. 1999) (initiating and filing a citation against Plaintiff without probable cause was insufficient to constitute a seizure for purposes of a Fourth Amendment claim); Banton v. Dowds, 2007 U.S. Dist. LEXIS 78355, 10-11 (C.D. Ill. Aug. 20, 2007) ("The issue of whether the issuance of a summons and requirement that Plaintiff appear in court constitutes a seizure is not the subject of an abundance of case law. 'The sparsity of case law on the question suggests not that the principle is dubious but that it is too obvious to have incited many challenges.'") (quoting Amati v. City of Woodstock, 176 F.3d 952, 956 (7th Cir. 1999)); compare Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998) (requiring the plaintiff to post a $ 10,000 bond, attend court hearings, contact pretrial services regularly, and refrain from traveling outside of New Jersey and Pennsylvania was held to be a seizure sufficient to state a Fourth Amendment violation for purposes of a § 1983 malicious prosecution claim).

Given that he was never "seized" as that term has been interpreted in connection with the Fourth Amendment, Plaintiff has no Fourth Amendment malicious prosecution claim to assert, and Sgt. Anderson is entitled to summary judgment on those claims (Counts IV-VI) even if they are not dismissed for lack of probable cause or on qualified immunity grounds.

## IV. PLAINTIFF'S FIRST AMENDMENT RETALIATION AND STATE COURT MALICIOUS ABUSE OF PROCESS CLAIMS ALSO FAIL BECAUSE THEY WERE PREVIOUSLY RELEASED BY PLAINTIFF IN A NOVEMBER 2005 SETTLEMENT AGREEMENT

"While state law governs limitations and tolling issues, federal law determines the accrual of section 1983 claims." Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." Id. Under the federal discovery rule, claims accrue "when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Alexander v. Oklahoma, 382 F.3d 1206, 1215 (10th Cir. 2004) (internal quotations omitted), cert. denied, 544 U.S. 1044 (2005). The focus is "on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm. In this context, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief." Id. at 1216 (internal citations omitted).

In this case, Plaintiff is asserting a § 1983 claim for alleged retaliation in violation of the First Amendment and a state tort claim for malicious abuse of process. Unlike Plaintiff's Fourth Amendment claim for malicious prosecution (which does not accrue until/unless the plaintiff is ultimately successful in the underlying criminal action), these causes of action accrued on the date Plaintiff became aware that Sgt. Anderson allegedly (1) retaliated against him in violation of the First Amendment and (2) maliciously abused the process. The alleged retaliatory and abusive conduct was the "filing" of criminal charges against Plaintiff, which took place on January 11, 2005.

This is important because in November 2005, Plaintiff executed a "Settlement Agreement and Release of All Claims," which released the City of Farmington and its employees of any claims that he had as of that date. See Fact No. 12. Having specifically released all claims

against the City of Farmington and its agents and employees, Plaintiff cannot now be heard to assert claims for First Amendment retaliation and malicious abuse of process stemming from the events of January/February 2005, as all such claims were expressly released.  Accordingly, even if Counts I, II, III, VII, VIII, IX, and X were to survive Sgt. Anderson's other summary judgment arguments (set forth above), Sgt. Anderson would still be entitled to summary judgment because these claims were previously released.

**V.      PLAINTIFF'S STATE TORT CLAIMS ALSO FAIL BECAUSE HE DID NOT COMPLY WITH THE NEW MEXICO TORT CLAIMS ACT'S NOTICE REQUIREMENTS AND BECAUSE HIS CLAIM IS TIME-BARRED UNDER THE ACT'S TWO-YEAR STATUTE OF LIMITATION**

Under the New Mexico Tort Claims Act, *governmental entities and public employees acting within the scope of their duties are immune from liability for any tort except as explicitly waived*.  NMSA 1978, § 41-4-4(A) (1996).  The waiver provisions of the Tort Claims Act are set forth in §§ 41-4-5 through 41-4-12.  As a governmental entity, Sgt. Anderson (as an employee of the City of Farmington) is entitled to protection afforded by the Tort Claims Act. NMSA 1978, § 41-4-3(C) (1991).

The New Mexico Tort Claims Act governs all tort actions that are brought against governmental entities. See NMSA 1978 § 41-4-2 ("it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act [41-4-1 to 41-4-27, NMSA 1978] and in accordance with the principles established in that Act.").  The right to sue and to recover against a governmental entity is limited to the rights, procedures, limitations, and conditions prescribed in the Tort Claims Act.  See Methola v. County of Eddy, 95 N.M. 329, 333-34, 622 P.2d 234, 238-39 (1980).  Furthermore, according to § 41-4-17(A), "the Tort Claims Act *shall be the exclusive remedy against a governmental entity or public employee for any tort* for which immunity has

been waived under the Tort Claims Act . . ." (emphasis added). Thus, because Plaintiff's malicious abuse of process claims are tort actions, the Tort Claims Act governs Plaintiff's claims against Sgt. Anderson.

Section 41-4-16 of the Tort Claims Act provides the procedures that must be followed regarding notice of claims against governmental entities and their employees:

> Every person who claims damages from the state or any local public body under the Tort Claims Act [41-4-1 to 41-4-27 NMSA 1978] shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, the superintendent of the school district for claims against the school district, the county clerk of a county for claims against the county, or to the administrative head of any other local public body for claims against such local public body, *within ninety days after an occurrence giving rise to a claim* for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

NMSA 1978, § 41-4-6 (A) (emphasis added). The purpose of the notice requirement is four-fold: (1) to enable the person or entity to whom notice must be given, or its insurance company, to investigate the matter while the facts are accessible; (2) to question witnesses; (3) to protect against simulated or aggravated claims; and (4) to consider whether to pay the claim or to refuse it. Ferguson v. New Mexico State Hwy. Comm'n, 99 N.M. 194, 656 P.2d 244 (Ct. App. 1982). The notice provisions found in § 41-4-16 operate as a condition precedent to filing a complaint. Id., 99 N.M. at 196, 656 P.2d at 246.

Applying the provisions of § 41-4-16(A), Plaintiff should have filed a notice of tort claim for malicious abuse of process no later than April 25, 2005 (90 days after his February 1st arraignment). However, Plaintiff never provided any such notice to Sgt. Anderson or his employer, the City of Farmington. See Fact 11. As such, even if immunity had been waived

under the Tort Claims Act, Plaintiff would be unable to bring suit, as he failed to comply with § 41-4-16.

Furthermore, the Tort Claims Act specifically provides that "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death." See NMSA 1978, § 41-4-15(A).  As noted above, Plaintiff's malicious abuse of process claim (unlike his Fourth Amendment malicious prosecution claim) accrued once he learned – no later than February 1, 2005 – of the allegedly improper criminal charges against him.  Accordingly, Plaintiff's claim needed to have been filed by February 1, 2007 to avoid a statute of limitations bar.  Plaintiff's malicious abuse of process claim was not asserted until February 2, 2009, when he filed his Second Amended Complaint.  Even assuming the Second Amended Complaint relates back to the filing of the original Complaint on January 11, 2008, Plaintiff's malicious abuse of process claim is untimely under § 41-4-15(A), meaning Sgt. Anderson is entitled to summary judgment on Counts VII –X.

WHEREFORE, given the foregoing, Defendant Ron Anderson respectfully requests that the Court enter summary judgment in his favor and against Plaintiff on each and every count of Plaintiff's Second Amended Complaint, and grant Defendant Anderson such other and further relief as appropriate under the circumstances.

MODRALL, SPERLING, ROEHL, HARRIS
& SISK, P.A.

By:     */s/ Alex Walker*
      Lisa Mann
      Erin E. Langenwalter
      Alex C. Walker
      Attorneys for Sgt. Ron Anderson
      Post Office Box 2168
      500 Fourth Street NW, Suite 1000
      Albuquerque, New Mexico  87103-2168
      Telephone: 505.848.1800

I hereby certify that on October 19th, 2009, I filed the foregoing electronically through the CM/ECF System, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Dennis Montoya
Counsel for Plaintiff

MODRALL, SPERLING, ROEHL, HARRIS & SISK, PA

By:   */s/ Alex Walker*
     Alex C. Walker

*W0983115.DOCX*