IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUAN MATA,

      **Plaintiff,**

vs.                              No. CIV 08-0046 JB/RLP

SGT. RON ANDERSON,

      **Defendant.**

## PLAINTIFFS' RESPONSE TO DEFENDANT RON ANDERSON'S MOTION FOR SUMMARY JUDGMENT

PLAINTIFF, by and through his attorney, Dennis W. Montoya, MONTOYA LAW, INC., hereby responds to the Motion for Summary Judgment filed herein by Defendant.

## BACKGROUND

Defendant recites the events of November 29, 2002 for two false propositions. First, that the events were legally justified—which they were not. More importantly, Defendant attempts, secondly, to rewrite history claiming that the events on that day "set off" or began hostility and problems between Plaintiff and several Farmington Police Officers.

In the first instance, the events on that day are simply misconstrued by Defendant. In fact, what happened is: as Mike Briseno of the Farmington Police Department continued his pattern of driving by the Mata residence, sometimes

dozens of times per day, Plaintiff's brother, Rene, became annoyed and "flipped off" Mike Briseno. The occurrences on November 29, 2002, did not occur in a vacuum and they were not the "beginning" of anything.

Mr. Briseno, who has repeatedly been found to lack candor when testifying under oath and has himself been the subject of a jury verdict for violating at least one other person's civil rights, became incensed.[1] He fabricated a report of "loud music" and entered on to the Mata property. During the fracas that followed, Briseno unlawfully Plaintiff's home, battered Rene Mata, battered Plaintiff, and shoved Plaintiff's elderly mother, who walks with a cane, off of a set of stairs. Mike Briseno was not alone in his illegal and violent wrong-doing against the Matas—several other Farmington Police officers participated.

Plaintiff was then arrested and charged with a crime that he did not commit. Plaintiff was never convicted of any crime. Plaintiff and his family subsequently filed against the Farmington Police Officers who violated their rights. Ultimately, the City of Farmington paid seventy-five thousand dollars ($75,000.00) to compensate Plaintiff and his family. Although the City of Farmington sought and received a standard release of claims, which of course recited the standard

---

[1] The judicial rulings in which Mike Briseno were found to be not credible as well as his unlawful actions toward Chester Mitchell played a role in Plaintiff's characterization of Mr. Briseno as a "dirty cop" during his two-man protest at the police station.

language that there was no admission of any wrongdoing, the amount of settlement clearly indicates that the City had concerns about proceeding to trial. These events are only relevant in that they portray one, albeit very serious, background incident that gave rise to Plaintiff's desire to speak out against abuses by Farmington Police officers.

Defendant further attempts to portray Plaintiff as an unreasonable person by falsely accusing him of drafting a letter that accused Mike Briseno of committing eleven felonies. In fact, as Defendant well knows, that letter was drafted by a paralegal under the supervision of attorney Ronald R. Adamson, reviewed and signed by Mr. Adamson and sent by Mr. Adamson. Defendant's incorrect factual account is disputed below. There has never been any evidence of testimony—other than police officers' raw suspicion that any criticism of their "brothers" must be coming from Plaintiff—that Mr. Mata had anything to do with the letter complaining of the crimes committed in a videotaped interaction. Furthermore, Defendant neglects to inform the Court that the only reason that Mr. Briseno cannot be said to have committed the felonies listed in that letter is that his police unit was being used by other officers. There is no legitimate argument that the individuals operating Mr. Briseno police cruiser committed numerous, dangerous felony crimes.

## THE STANDARD OF REVIEW

The standard for summary judgment under Rule 56 is set forth in cases such as *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The court must review all of the evidence in the record, *cf., e.g.*, *Matsushita Elec. Industrial Co. vs. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1996), drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence, *e.g.*, *Lytle vs. Household Mfg., Inc.,* 494 U.S. 545, 554-555, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990). The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) In considering a motion for summary judgment, the Court construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. *Perry v. Woodward,* 199 F.3d 1126, 1131 (10th Cir. 1999). "On a motion for summary judgment, the issue is 'not whether [the court] thinks evidence unmistakenly favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.'" *Anderson v. Liberty Lobby,* 106 S.Ct. at 2512. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that

the jury is not required to believe. To carry its initial burden the moving party must show that there is a complete absence of evidence to support the nonmoving party's case. *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).

## DISPUTED ISSUES OF MATERIAL FACT

Plaintiff Mata addresses Defendant Anderson's alleged Undisputed Facts, as follows:

1. Plaintiff Juan Mata claimed that his civil rights violated during a November 29,2002 arrest in which Plaintiff was pepper sprayed by Officer Mike Briseno. The 11/29/02 incident ultimately resulted in a civil rights lawsuit against the City of Farmington and several police officers, including Officer Briseno. See Complaint, filed 11/28/04 [Doc. No. 1] (04cv1334 ACT/RLP).

**UNDISPUTED**.

2. On May 12, 2003, the Farmington Police Department received a petition delivered by Gregoria Mora, Juan Mata's mother, signed by Juan Mata and others, claiming that Officer Briseno had engaged in illegal stops and searches. See Affidavit of Sgt. Anderson, ¶ 5 [Doc. 35,filed 10/19/09]. Internal affairs investigated the improper conduct alleged in the May 12, 2003 petition by sending letters to the 147 people whose names and addresses could be deciphered from the petition. Of the 20 individuals who responded, 16 stated that they had never had any negative contacts with Officer Briseno. Seven of the 20 people reported that they did not sign the petition and felt that their names had been forged. None of the 20 individuals who responded to the investigation provided any verifiable information about any improper conduct by Officer Briseno while working for the Farmington Police Department. Id., ¶ 11. The investigation, completed in early July 2003, determined that the complaint was deemed *Unsustained.* Id., ¶ 11.

**DISPUTED IN PART**. The investigation was designed to intimidate the signers of the petition and succeeded in doing so. It also misstated the petition to the

signers. *See Exhibits A and B: Affidavits of Maria Mata and Alice Atencio*. Futhermore, Defendant's attempt to benefit from his department's retaliatory tactics against people who signed the petition does not undermine the legality of circulating a petition. Defendant has provided no admissible evidence demonstrating that the signatures on the petition were fraudulent, relying instead upon hearsay.

> 3. On May 20, 2003, Sgt. Anderson received an interoffice memorandum from Officer Briseno regarding a potential death threat against him by Juan Mata. See Affidavit of Sgt. Anderson, ¶ 7 [Doc. 35]. On May 23, 2003, Sgt. Anderson received another interoffice memorandum from Officer Briseno regarding possible threats by Juan Mata. Id., ¶ 8.

**DISPUTED IN PART**. While Officer Briseno may have sent the interoffice memorandum it was wholly based upon falsehoods. *See Exhibit C: Affidavit of Brandon Cummings*.

> 4. In early September 2004, the Farmington Police Department received a letter accusing Officer Briseno of having committed 11 felonies. The letter was signed by Ron Adamson, who stated in the letter that he was acting on behalf of Juan Mata. See Affidavit of Sgt. Anderson, ¶¶ 13-14 [Doc. 35]. After learning of the letter, Sgt. Anderson checked Officer Briseno's duty schedule and learned that not only was he not on duty, but he wasn't even in the state during the time he was alleged to have committed these felonies. Id., ¶ 15.

**DISPUTED IN PART**. The letter stated that officers Kent O'Donnell and Mike Briseno, while driving in Mike Briseno's unmarked police car, engaged in unlawful acts. It was subsequently determined that, although the unmarked police car was the unit assigned to Mike Briseno, it was being operated and occupied by Kent O'Donnell and David Griego. *See Defendant's Exhibit 4 and Exhibit C: Affidavit of Brandon Cummings.*

> 5. Sometime in mid-September, Sgt. Anderson spoke with Bill Cooke, an attorney for the City of Farmington, seeking advice on how to handle the situation (*i.e.*, the alleged death threats, the petition, and the letter) involving Officer Briseno and Juan Mata. See Affidavit of Sgt. Anderson, ¶ 17 [Doc. 35].

**UNDISPUTED**. Given Mr. Cooke's involvement at the stage described by Defendant, Plaintiff will be moving to add him as a Defendant to this action.

> 6. On October 28, 2004, Juan Mata appeared outside the City of Farmington police department, displaying signs accusing Officer Briseno of being "dirty" and a "liar." See Affidavit of Sgt. Anderson, ¶ 19 [Doc. 35]; also Juan Mata Depo., p. 116:17 – 117:16 (Exhibit A).

**UNDISPUTED**. However, to the extent that Defendant attempts to discredit Plaintiff's claims that Mike Briseno is a liar and/or "dirty," see *Exhibit C: Affidavit of Brandon Cummings*.

> 7. At the end of November, 2004, Sgt. Anderson met again with Bill Cooke to discuss the situation involving Officer Briseno and Juan Mata. Mr. Cooke told Sgt. Anderson that he believed Mr. Mata's actions violated one or more criminal statutes and that he was in the process of preparing a criminal complaint. See Affidavit of Sgt. Anderson, ¶ 21 [Doc. 35].

**DISPUTED**. Defendant Anderson and Mr. Cooke met to determine what crimes they might be able to charge Mr. Mata with in order to retaliate against him for criticizing Mike Briseno and other Farmington Police officers. *See Exhibit C: Affidavit of Brandon Cummings and Exhibit D: Affidavit of Monica Nagl.*

> 8. Sgt. Anderson met with Bill Cooke on January 11, 2005 and Sgt. Anderson signed a Criminal Complaint and a Statement of Probable Cause that Mr. Cooke had prepared for his signature. See Affidavit of Sgt. Anderson, ¶ 22 [Doc. 35].

**UNDISPUTED**. Given Mr. Cooke's involvement at the stage described by Defendant, Plaintiff will be moving to add him as a Defendant to this action.

> 9. Plaintiff learned of the criminal charges when he received a letter in the mail advising him to appear in Court. See Juan Mata Depo., p. 92-93. At no time before or after he received the criminal complaint was Plaintiff arrested, handcuffed or taken into custody. See Juan Mata Depo., p. 92:14 to 96: 14. He was not required to report to a police station or stay in his house, and was free to leave the Court and go about his business. Id.

**UNDISPUTED**.

> 10. Through his counsel, Plaintiff had opportunity to present evidence and argument to the Magistrate Court. Plaintiff was thereafter convicted on all

three charges. See Juan Mata Depo., p. 92:14 to 96: 14. Plaintiff appealed his conviction to the District Court. Though the criminal libel charge was dismissed on constitutional grounds, Plaintiff was acquitted of the harassment and stalking charges only after a full trial and jury verdict. See Juan Mata Depo., p. 100:1-12.

**UNDISPUTED**.

11. Juan Mata did not file a Tort Claims Act notice in connection with his malicious abuse of process claim. See Affidavit of Ezora Boognl, ¶ 4 [Doc. 34, filed 10/19/09].

**UNDISPUTED**, but irrelevant. Tort Claims Notices must be filed only against municipal entities. Individuals are not entitled to a Tort Claims Notice in New Mexico.

12. Juan Mata's first case against the City of Farmington settled on November 16,2005. See Judge Puglisi Notice to Docket Clerk [Doc. 8-2]. As part of the settlement, Mata agreed to release "any and all claims that Plaintiffs [including Juan Mata] now have or could hereafter assert against any of the Released Parties of any nature whatsoever." See Affidavit of Ezora Boognl, ¶ 3 [Doc. 34]; see also Juan Mata Deposition, p. 73:24 to p. 74:6; and p. 74:22 to p. 76:4.

**DISPUTED IN PART**. Plaintiff and his family settled all claims arising from the assault perpetrated upon himself and his family for $75,000.00. Nothing in the release described related to or controls the instant case.

## DISCUSSION

To establish a malicious prosecution claim under § 1983, a plaintiff must prove that the defendant initiated or continued a proceeding against him without probable cause. *Becker v. Kroll*, 494 F.3d 904, 913-14 (10th Cir. 2007). The affidavits of Brandon Cummings and Monica Nagl create sufficient dispute that this determination must be resolved by a jury. Furthermore, although police

officers may in generally rely on the validity and constitutionality of laws passed by the legislature, they may not rely on laws "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see [their] flaws." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979); *Illinois v. Krull*, 480 U.S. 340, 350-55 (1987); *United States v. Brantley*, 2009 U.S. App. LEXIS 19270 (3d Cir. N.J. Aug. 27, 2009). There can be no doubt that the "criminal libel" statute is precisely such an instance.

Likewise, Defendant's claim that there was probable cause to believe that Plaintiff committed the crime of harassment must fail. In New Mexico, harassment requires proof that a person knowingly pursued "a pattern of conduct that is intended to annoy, seriously alarm or terrorize another person" to the extent that a reasonable person would "suffer substantial emotional distress." NMSA 30-3A-2(A); see *State v. Gonzales*, 123 N.M. 337, 341 (Ct. App. 1997). The fact that an a licensed private investigator, hired by attorneys, surveilled Mike Briseno cannot give rise to harassment. Otherwise all investigation by a private investigator would be harassment and private investigation would be barred. Furthermore, the claim that harassment resulted from the supposed hiring of a hit man is, at a minimum, a disputed fact. *Exhibit C*. Given that that claim was arguably a complete fabrication by a member of Defendant's police force and given that Defendant and others

knew that Mike Briseno is untrustworthy, Mr. Briseno's untruthful claim was not sufficient to cause a person of reasonable intelligence to believe that he was being harassed. In addition, if such a death threat was believed, the filing of a felony charge regarding the attempted solicitation of murder or the like would have been forthcoming. That Defendant knew Mr. Briseno's claim was false can be intimated by the fact that such a serious charge was only referenced in support of a misdemeanor—and even then only in the district court trial.

Likewise, stalking, according to UJI 14-331, requires that Plaintiff follow, order the surveillance of, or harass Mike Briseno *in order to* place Mr. Briseno in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint or to cause a reasonable person to fear for the person's safety or the safety of a household member. There is no evidence that Plaintiff hired the private investigator that surveilled Mike Briseno and, even if there were, private investigators are not subject to the stalking prohibition for just following and surveilling an individual. As previously stated, there are material disputes over the claim that anyone ever stated that a "hit man" from Juarez had been hired to kill Mike Briseno.

In cases that involve delving into the state of mind of a party, the granting of summary judgment is especially questionable. *See, e.g, Hayden v. First Nat'l*

*Bank*, 595 F.2d 994, 997 (5th Cir. 1979). "If plaintiffs claim that some conduct on the part of defendant abridged their First Amendment rights, summary judgment may be precluded because questions concerning defendant's motives or knowledge must be determined." *See* 10B C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2732.2 at 153-54, 177 (3d ed. 1998). See, generally, *Seamons v. Snow*, 206 F.3d 1021 (10th Cir. 2000); *Sample v. Aldi Inc.*, 61 F.3d 544, 547 (7th Cir. 1995); *Geier v. Medtronic, Inc.*, 99 F.3d 238 (7th Cir. 1996)(The summary judgment standard is applied with special scrutiny to employment discrimination cases, which often turn on the issues of intent or credibility).

Finally, Plaintiff's state law claims do not require a showing that there was no probable cause to charge him. On the contrary, "the procedural impropriety theory, unlike the lack of probable cause theory, does not stand or fall on the merits of the underlying claims." *Fleetwood Retail Corp. of N.M. v. Le Doux*, 2007-NMSC-047, ¶31, 142 N.M. 150 (2007).

The procedural impropriety theory "retains the broader dimensions of the former tort of abuse of process, which recognized that even in meritorious cases the legal process may be abused." *Id.* ¶ 22 (internal quotation marks and citation omitted). In the context of this case, the procedural impropriety theory focuses on the question of whether, despite the existence of probable cause, process has been

perverted to accomplish an ulterior purpose for which it was not designed, even if properly begun, "has been perverted to accomplish an ulterior purpose for which it was not designed." *Richardson v. Rutherford*, 109 N.M. 495, 501-02, 787 P.2d 414, 420-21 (1990); *Santillo v. N.M. Dept. of Public Safety*, 143 N.M. 84, 91, 173 P.3d 6, 13 (Ct. App. 2007). There is ample evidence that the process against Plaintiff was so perverted and Plaintiff's state law claim should survive Defendant's motion. Fleetwood, 142 N.M. at 157 (unfounded claims brought in bad faith and for the purpose of harassing a defendant, even though coupled with a valid claim, can constitute a procedural impropriety that will support a malicious abuse of process claim). It is also the case that New Mexico recognizes that a party should be equitably estopped from asserting that a party should be time barred from bringing suit where that party acted to conceal his involvement. In this case, Plaintiff did not learn of Defendant's desire to "get him" by reviewing statutes solely for the purpose of finding something to charge him with in retaliation for his speech, until after his criminal case resulted in an acquittal. *Butler v. Deutsche Morgan Grenfell, Inc.*, 140 N.M. 111, 140 P.3d 532 (Ct. App. 2006). Under the circumstances, summary judgment is inappropriate and this case should proceed to trial.

## **CONCLUSION**

The foregoing amply demonstrates multiple issues of disputed material fact concerning the existence of probable cause to bring any charges against Plaintiff. Qualified immunity does not shield Defendant because, in the light most favorable to Plaintiff, it is arguable that Defendant undertook his actions knowing they were baseless for the sole purpose of retaliating against Plaintiff for speaking out about abuses perpetrated by the Farmington Police Department and/or causing other people to speak out against those abuses. Plaintiff's state law claims should also proceed. For all of the foregoing reasons, the Motion for Summary Judgment should be denied, and this case should be allowed to continue on the Court's trial docket.

                                                Respectfully submitted,
                                                **MONTOYA LAW, INC.**

By:   /s/
       _____
       Dennis W. Montoya
       Attorney for Plaintiffs
       P.O. Box 15235
       Rio Rancho, NM  87174-0235
       (505) 246-8499
       (505) 246-8599 (Facsimile)
       dmontoya@montoyalaw.com

I HEREBY CERTIFY that the foregoing Response to Motion for Summary Judgment was filed via the Court's CM/ECF electronic filing system on November 6, 2009, which upon information and belief resulted in its electronic transmission, together with a copy of this Certificate of Service, to all counsel of record.

/s/
_____
Dennis W. Montoya